In re Jacob F. **BUTCHER** a/k/a Jake F. Butcher and Jake Butcher, Debtor.

Bankruptcy No. 3–83–01036.

United States Bankruptcy Court, E.D. Tennessee.

April 4, 1984.

Bass, Berry & Sims, J.O. Bass, Jr., Nashville, Tenn., for Trustee.

Neal & Harwell, William T. Ramsey, Nashville, Tenn., for debtor.

Robert E. Simpson, Knoxville, Tenn., for U.S.

MEMORANDUM ON RECONSIDERATION OF TRUSTEE'S MOTION TO INSPECT AND COPY RECORDS

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether the trustee is entitled to inspect and copy certain records of the debtor currently in the custody of the United States. The records in question, seized pursuant to a federal search warrant, were removed from the involuntary debtor's former residence subsequent to the entry of the order for relief. The United States has indicated it will comply with an order requiring it to make the disputed records available for inspection and photocopying. The debtor, however, insists that the records, which may contain incriminating evidence, were seized in violation of his rights under the Fourth Amendment. He strenuously urges the court to deny the trustee's request for access to the seized documents.

I

An order for relief, pursuant to 11 U.S.C.A. § 303(h) (1979), was entered on August 22, 1983. The debtor filed a motion on September 7, 1983, requesting a stay of his duty to turn over recorded information relating to property of the estate. At a subsequent hearing on this motion, James F. Sanders, one of the debtor's attorneys, advised the court that the debtor proposed to surrender to the trustee only nonincriminatory records pertaining to property of the estate. However, to avoid any question of waiver, Sanders essentially stated that the court should compel the debtor to comply with any duties required under the Bankruptcy Code.

On November 23, 1983, the trustee [1] filed a motion requesting this court to order the debtor to surrender all recorded information pertaining to property of the estate within his possession, custody, or control. After a hearing on December 21, 1983, the matter was taken under advisement.

On November 18, 1983, five days prior to the trustee's turnover motion, the Federal Bureau of Investigation seized and removed some of the debtor's records from his former residence. On December 12, 1983, the trustee filed a motion in the United States District Court for the Eastern District of Tennessee requesting permission to inspect and copy the records seized by the FBI. This motion was initially denied by the district court. However, on January 31, 1984, after rehearing the trustee's motion, the district court vacated its previous denial order and referred the matter to this court, pursuant to paragraph (c)(1) of the emergency Rule for the Administration of the Bankruptcy Court.[2] On the next day, February 1, 1984, this court entered Order No. 50 in this case, requiring the debtor to surrender to the trustee:

(1) The books of any and all corporations relating to property of the estate in either the actual or constructive possession of the debtor;

(2) The books and records of any noncorporate collective entity, including but not limited to partnerships, relating to property of the estate in either the actual or constructive possession of the debtor;

(3) Noncorporate or nonpartnership records having public aspects, if any, which are required to be kept by either federal or state law;

(4) Work papers or similar documents: (i) prepared by the debtor's accountants or other third parties, (ii) known to exist and identifiable by the trustee, and (iii) requiring no authentication by the debtor or his attorneys, insofar as the attorney-client privilege is applicable;

(5) All personal books and records of the debtor relating to property of the estate, not heretofore described ... unless: (i) the contents of those books and records are self-incriminating, or (ii) the act of producing said books and records is self-incriminating.

Some three weeks later attorneys for the trustee, the debtor, and the United States presented their oral arguments in this court on the issue of whether the trustee is entitled to inspect and copy the records seized on November 18, 1983, by the FBI.[3] On February 27, 1984, repeating the provisions of Order No. 50 quoted in the preceding paragraph, this court entered Order No. 58, requiring the United States to make all such records available to the trustee for inspection and copying. Because it hoped the parties could agree on how to implement Order No. 58, the court purposely omitted any procedural instruction.

Motions for reconsideration of Order No. 58 have been filed by both the trustee and the debtor. The trustee, desiring to inspect and copy all records seized by the FBI, contends that the records in question are now clearly outside the protective scope of the Fifth Amendment privilege against

---

1. An order of this court approving the election of John H. Bailey, III, as trustee was entered on September 30, 1983.

2. Paragraph (c)(1) of this rule, entered by the district court on December 23, 1982, recites:

    Reference to Bankruptcy Judges
       (1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

3. At this hearing, held on February 24, 1984, J.O. Bass, Jr., an attorney for the trustee, advised the court that three days earlier the debtor had turned over certain corporate records to a federal grand jury. After Mr. Simpson, an Assistant United States Attorney, announced that the corporate records delivered pursuant to the grand jury subpoena are district court records, Mr. Bass stated that the trustee would seek permission to inspect and copy the subpoenaed documents from the district court. Hence, the only records presently at issue in this court are those seized by the FBI on November 18, 1983.

self-incrimination because they are no longer in the possession, actual or constructive, of the debtor. Since the United States already has the records, the trustee asserts that permitting him to inspect and copy them cannot prejudice the debtor. According to the trustee, disclosure to him will not impair the debtor's challenge in any subsequent criminal proceeding to the legality of the FBI search and seizure. Alternatively, the trustee asks the court to require the debtor to designate, by reference to the publicly filed inventory of items seized, which items are immune from his inspection and copying under the terms of Order No. 58.

In contradistinction, the debtor insists that the United States cannot afford the trustee access to any of the disputed records until such time as it is determined that the records were legally seized and that disclosure is not forbidden by Fed.R. Crim.P. 6(e). Further, the debtor contends that the alternative relief requested by the trustee must be denied. He maintains that requiring him to identify the documents which might tend to incriminate him impermissibly compels him to provide a "roadmap" of possibly incriminatory documents.[4]

## II

Section 521 of Title 11 of the United States Code enacts in material part:

The debtor shall—

.   .   .   .   .

(3) if a trustee is serving in the case, surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate. . . .

This court has previously determined that the trustee is entitled to all records relating to property of the estate in the debtor's actual or constructive possession, with the exception of personal records which are content-incriminatory or whose production would involve a self-incriminating act. See *In re Butcher*, 38 B.R. 785, 11 Bankr.Ct. Dec. (CRR) 603 (Bkrtcy.E.D.Tenn.1984).[5] The publicly filed FBI inventory of documents the trustee desires to inspect and copy suggests that most of the disputed records are not personal records of the debtor. Instead, it appears that a substantial numerical majority of the documents are corporate or noncorporate "collective entity"[6] records relating to property of the estate.[7] It is the opinion of this court that

---

**4.** The debtor also contends that a recent Supreme Court decision, *United States v. Doe*, —— U.S. ——, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984), requires modification of Order No. 58. Relying upon *Doe*, the debtor essentially asserts that the character of a document (i.e., corporate, partnership, sole proprietorship, or personal) is inconsequential. According to the debtor, if the act of producing a document is self-incriminatory, production is excused under the Court's decision in *Doe*. The debtor interprets *Doe*, which involved only business records of sole proprietorships, too broadly. The Court gave no indication of an intention to overrule earlier decisions that corporate records are not immune from production on the basis that they contain information incriminating either the custodian of the records or any officer of the corporation. See *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); *Wilson v. United States*, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911).

**5.** Pursuant to their agreement, the trustee and the debtor have directly appealed this court's decision to the Sixth Circuit Court of Appeals. See 28 U.S.C.A. § 1293(b) (Supp.1983).

**6.** A "collective entity" is an organization generally "recognized as an independent entity apart from its individual members." *Bellis v. United States*, 417 U.S. 85, 92, 94 S.Ct. 2179, 2185, 40 L.Ed.2d 678 (1974).

**7.** The trustee's affidavit filed in the district court on January 19, 1984, recites in relevant part:

(7) Most of the items indicated in the inventory of property seized purport to pertain to corporate or other entities. Based on information and belief, I represent that Butcher had an ownership interest in all such entities, some of which are corporations but others of which may be proprietorships or alter egos of Butcher. It is my belief that records of these entities will reveal such information, and will be helpful to me in attempting to trace the flow of funds from Butcher to or through such entities. Such information is essential to enable me, as Trustee, to determine what, if any, funds or other assets may be recovered for the benefit of Butcher's creditors.

the trustee is clearly entitled to these records.[8]

■ The Fifth Amendment prohibits the compulsion of self-incriminating testimony. With respect to documents, actual or constructive possession by the party asserting the privilege is necessary before the privilege may be invoked. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (taxpayer may not invoke Fifth Amendment privilege against self-incrimination to prevent production of business and tax records in possession of her accountant where IRS summons directed to the accountant); *Matter of Grand Jury (Colucci and DeMato)*, 597 F.2d 851, 863 (3rd Cir.1979) (Fifth Amendment rights of employer not compromised through enforcement of subpoena served on employee charged with exclusive responsibility for preparation and custody of business records). The debtor obviously does not have actual possession, but he maintains that the disputed records are in his constructive possession. Although the debtor may have some interest, subject to the trustee's rights, in the return of the records,[9] they are not in his constructive possession. The debtor has no control over the records seized by the FBI.[10] Requiring the United States to make them available to the trustee for inspection and copying does not involve any element of personal compulsion impinging upon the debtor.[11]

■ Assuming *arguendo* that the debtor subsequently establishes that the disputed records were seized in violation of his constitutional rights, his right, pursuant to Fed.R.Crim.P. 41(e),[12] to regain possession is subject to the trustee's title to, and interest in, the records. Hence, only those personal records which are content-incriminatory or whose production would involve a self-incriminatory act would be exempt from turnover to the trustee. Fearing charges of waiver and that his designation of such records might be communicated to the United States, thus enabling the Government to narrow the focus of its investigation, the debtor has declined to disclose or identify the records seized by the FBI which he believes to be immune, by virtue of his privilege against self-incrimination, from turnover to the trustee. For the purpose of surrender of recorded information relating to property of the estate, it is now apparent that the debtor and trustee cannot proceed vis-a-vis as if the FBI seizure of records had not occurred.[13] Sustaining the debtor's Fifth Amendment privilege claim without requiring him to assert the privilege on an item-by-item basis would deny the trustee access to numerous records to which this court believes he is clearly entitled. Under these circumstances it is incumbent upon the debtor to assert his privilege claim on an item-by-item basis.

**8.** Although the debtor filed notice of appeal of that portion of Order No. 50 requiring turnover of corporate and noncorporate collective entity records, William Ramsey, one of the debtor's attorneys, announced in open court on March 23, 1984, that the debtor had effectively mooted his appeal by complying with the terms of the turnover order.

**9.** See Fed.R.Crim.P. 41(e) which provides in part:

> *Motion for Return of Property.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. ... If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial.

**10.** *Constructive possession.* A person has constructive possession of property if he has power-

er to control and intent to control such item. ... Being in a position to exercise dominion or control over a thing. (Citations omitted.) *Black's Law Dictionary* 285 (5th ed. 1979).

**11.** See *United States v. Hershenow*, 680 F.2d 847, 856 (1st Cir.1982): "Where constructive possession is claimed, it must be 'so clear ... as to leave the personal compulsions upon the accused substantially intact.' *Couch v. United States*, 409 U.S. at 333 [93 S.Ct. at 618]...."

**12.** See note 9, *supra.*

**13.** At the conclusion of the March 23, 1984, hearing on the motions for reconsideration, the court afforded the trustee and the debtor five (5) days to reach some agreement allowing the trustee access to documents to which he is entitled. However, they have not been able to agree upon a procedure to effect Order No. 58.

His refusal to do so leaves the court with no choice—the trustee must be allowed to inspect and copy all of the records in the custody of the United States which were seized by the FBI and removed from the debtor's former residence on November 18, 1983, subject only to the establishment of any bona fide claim of attorney-client privilege.[14] (The question of attorney-client privilege was raised by William Ramsey, an attorney for the debtor, at hearing of March 23, 1984.)[15]

■ Finally the court does not believe that Fed.R.Crim.P. 6(e) prohibits the trustee from inspecting and copying the contested records. By operation of law, 11 U.S.C.A. § 521(3) (1979), the trustee's rights with respect to the records in question arose prior to the FBI seizure. Further, assuming arguendo that the records are grand jury records—the United States represents that they are not—the policy of secrecy is not absolute. The trustee is not seeking a transcript of grand jury proceedings. See *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (party seeking grand jury transcript must establish particularized need). He merely seeks records necessary to the performance of his duties under 11 U.S.C.A. § 704 (1979). In an action by a state commission to obtain records in the possession of a federal grand jury, the Third Circuit Court of Appeals stated:

Rule 6(e) shields solely "matters occurring before the grand jury." It is designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process. ... The Rule is not intended "to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." ... The mere fact that a particular document is reviewed by a grand jury does not convert it into a "matter occurring before the grand jury" within the meaning of 6(e). Documents such as the business records sought by the Commission here are created for purposes independent of grand jury investigations, and such records have many legitimate uses unrelated to the substance of the grand jury proceedings. (Citations omitted.)

*In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3rd Cir.1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981).

The trustee clearly does not seek any disclosure of events occurring before the grand jury. He has a legitimate, substantial need to inspect and copy the contested records in order to perform his investigation of the debtor's financial affairs.

In summary, the trustee is entitled to inspect and copy all of the records in the custody of the United States pursuant to

**14.** *Contra In re Smith*, 24 B.R. 3 (Bkrtcy.S.D.Fla. 1982) (attorney-client privilege of individual debtor passes to trustee by operation of law). *But see Commodity Futures Trading Comm'n v. Weintraub*, 722 F.2d 338, 11 Bankr.Ct.Dec. (CRR) 428, 432–33 (7th Cir.1983) (passage of individual debtor's attorney-client privilege produces absurd result of permitting trustee to waive privilege pertaining to information he himself seeks to discover).

**15.** The court's decision does not jeopardize the debtor's rights. If the records at issue were seized in violation of the Fourth Amendment, where appropriate, the debtor's attorneys may move to suppress their introduction, or the fruits thereof, as evidence. See *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

Mr. Ramsey argued on March 23, 1984, that allowing the trustee to inspect and copy the contested records will make it more difficult for the debtor to trace the taint of evidence derived from the allegedly illegal seizure. While this may be true, it presupposes that the November 18, 1983, FBI seizure violated the debtor's Fourth Amendment rights. That issue is not before this court. Further, the debtor's attorneys are quite competent; they should be able to establish taint where it does exist. (Once a movant establishes a *prima facie* case of unlawful search and seizure, the burden shifts to the Government to dispel the taint charge. *United States v. Wickizer*, 633 F.2d 900, 901 (6th Cir. 1980), *cert. denied*, 450 U.S. 935, 101 S.Ct. 1401, 67 L.Ed.2d 370 (1981).) Most importantly, this court will not deny the trustee access to nonprivileged records relating to property of the estate.

the FBI seizure of November 18, 1983, with the exception of those subject to the attorney-client privilege. The records at issue are not within the scope of protection afforded by the Fifth Amendment privilege against self-incrimination because they are not in the actual or constructive possession of the debtor. Further, the debtor's rights under the Fourth Amendment are not jeopardized by affording the trustee access to the disputed records. Finally, Fed.R. Crim.P. 6(e) does not prohibit the trustee from inspecting and copying the records in question.