# UNITED STATES *v.* DOE

No. 82–786.   Argued December 7, 1983—Decided February 28, 1984

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, REHNQUIST, and O'CONNOR, JJ., joined. O'CONNOR, J., filed a concurring opinion, *post*, p. 618. MARSHALL, J., filed an opinion concurring in part and dissenting in part, in which BRENNAN, J., joined, *post*, p. 618. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 619.

*Samuel A. Alito, Jr.*, argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey*, and *Joel M. Gershowitz.*

*Richard T. Philips* argued the cause and filed a brief for respondent.

JUSTICE POWELL delivered the opinion of the Court.

This case presents the issue whether, and to what extent, the Fifth Amendment privilege against compelled self-incrimination applies to the business records of a sole proprietorship.

I

Respondent is the owner of several sole proprietorships. In late 1980, a grand jury, during the course of an investigation of corruption in the awarding of county and municipal contracts, served five subpoenas on respondent. The first two demanded the production of the telephone records of several of respondent's companies and all records pertaining to four bank accounts of respondent and his companies. The subpoenas were limited to the period between January 1, 1977, and the dates of the subpoenas. The third subpoena demanded the production of a list of virtually all the business records of one of respondent's companies for the period be-

tween January 1, 1976, and the date of the subpoena.[1]   The fourth subpoena sought production of a similar list of business records belonging to another company.[2]   The final subpoena demanded production of all bank statements and cancelled checks of two of respondent's companies that had accounts at a bank in the Grand Cayman Islands.

## II

Respondent filed a motion in Federal District Court seeking to quash the subpoenas.   The District Court for the District of New Jersey granted his motion except with respect to those documents and records required by law to be kept or disclosed to a public agency.[3]   In reaching its decision, the

---

[1] The categories of records sought by the third subpoena were: (1) general ledgers; (2) general journals; (3) cash disbursement journals; (4) petty cash books and vouchers; (5) purchase journals; (6) vouchers; (7) paid bills; (8) invoices; (9) cash receipts journal; (10) billings; (11) bank statements; (12) canceled checks and check stubs; (13) payroll records; (14) contracts and copies of contracts, including all retainer agreements; (15) financial statements; (16) bank deposit tickets; (17) retained copies of partnership income tax returns; (18) retained copies of payroll tax returns; (19) accounts payable ledger; (20) accounts receivable ledger; (21) telephone company statement of calls and telegrams, and all telephone toll slips; (22) records of all escrow, trust, or fiduciary accounts maintained on behalf of clients; (23) safe deposit box records; (24) records of all purchases and sales of all stocks and bonds; (25) names and home addresses of all partners, associates, and employees; (26) W–2 forms of each partner, associate, and employee; (27) workpapers; and (28) copies of tax returns.

[2] The only documents requested in the fourth subpoena that were not requested in the third were the company's stock transfer book, any corporate minutes, the corporate charter, all correspondence and memoranda, and all bids, bid bonds, and contracts.   The request for "corporate" minutes and the "corporate" charter is puzzling because the company named in the subpoena was an unincorporated sole proprietorship.

[3] The District Court mentioned tax returns and W–2 statements as examples of documents falling within this category.   Respondent has not challenged this aspect of the District Court's opinion.   We therefore understand that this case concerns only business documents and records not required by law to be kept or disclosed to a public agency.   We also note

District Court noted that the Government had conceded that the materials sought in the subpoena were or might be incriminating. The court stated that, therefore, "the relevant inquiry is . . . whether the *act* of producing the documents has communicative aspects which warrant Fifth Amendment protection." *In re Grand Jury Empanelled March 19, 1980,* 541 F. Supp. 1, 3 (1981) (emphasis in original). The court found that the act of production would compel respondent to "admit that the records exist, that they are in his possession, and that they are authentic." *Ibid.* While not ruling out the possibility that the Government could devise a way to ensure that the act of turning over the documents would not incriminate respondent, the court held that the Government had not made such a showing.

The Court of Appeals for the Third Circuit affirmed. *In re Grand Jury Empanelled March 19, 1980,* 680 F. 2d 327 (1982). It first addressed the question whether the Fifth Amendment ever applies to the records of a sole proprietorship. After noting that an individual may not assert the Fifth Amendment privilege on behalf of a corporation, partnership, or other collective entity under the holding of *Bellis* v. *United States,* 417 U. S. 85 (1974),[4] the Court of Appeals reasoned that the owner of a sole proprietorship acts in a personal rather than a representative capacity. As a result, the court held that respondent's claim of the privilege was not foreclosed by the reasoning of *Bellis.* 680 F. 2d, at 331.

The Court of Appeals next considered whether the documents at issue in this case are privileged. The court noted that this Court held in *Fisher* v. *United States,* 425 U. S. 391 (1976), that the contents of business records ordinarily are

---

that our opinion addresses only the Fifth Amendment implications of the subpoenas. The subpoenas were drawn in the broadest possible terms. It may be that the breadth of the subpoenas is subject to attack on other grounds that are not before us.

[4] *Bellis* defined a "collective entity" as "an organization which is recognized as an independent entity apart from its individual members." 417 U. S., at 92.

not privileged because they are created voluntarily and without compulsion. The Court of Appeals nevertheless found that respondent's business records were privileged under either of two analyses. First, the court reasoned that, notwithstanding the holdings in *Bellis* and *Fisher*, the business records of a sole proprietorship are no different from the individual owner's personal records. Noting that Third Circuit cases had held that private papers, although created voluntarily, are protected by the Fifth Amendment,[5] the court accorded the same protection to respondent's business papers.[6] Second, it held that respondent's act of producing the subpoenaed records would have "communicative aspects of its own." 680 F. 2d, at 335. The turning over of the subpoenaed documents to the grand jury would admit their existence and authenticity. Accordingly, respondent was entitled to assert his Fifth Amendment privilege rather than produce the subpoenaed documents.

The Government contended that the court should enforce the subpoenas because of the Government's offer not to use respondent's act of production against respondent in any

___

[5] See *In re Grand Jury Proceedings (Johanson)*, 632 F. 2d 1033 (1980); *ICC* v. *Gould*, 629 F. 2d 847 (1980), cert. denied, 449 U. S. 1077 (1981).

[6] JUSTICE STEVENS apparently reads the Court of Appeals' decision as merely affirming the District Court's finding that the act of producing the subpoenaed records was privileged. In support of this hypothesis, he quotes extensively from that portion of the Court of Appeals' opinion that addresses the act-of-production issue. The quoted passage, however, begins *after* the court has discussed whether the records themselves are privileged. After noting that *Fisher* could be read to deprive the contents of a sole proprietorship's records of Fifth Amendment protection, the court noted that other Third Circuit cases—principally *ICC* v. *Gould, supra,* had refused to adopt that interpretation. The court stated: "*Gould*, then, stands for the proposition that an individual's business papers, as well as his personal records, cannot be subpoenaed by a grand jury." 680 F. 2d, at 334 (footnote omitted). The court went on to hold, in the alternative, that the act of production is privileged as well. We note in passing that both parties share our interpretation of the Court of Appeals' opinion. Brief for United States 5; Brief for Respondent 3–4.

way. The Court of Appeals noted that no formal request for use immunity under 18 U. S. C. §§ 6002 and 6003 had been made. In light of this failure, the court held that the District Court did not err in rejecting the Government's attempt to compel delivery of the subpoenaed records.

We granted certiorari to resolve the apparent conflict between the Court of Appeals' holding and the reasoning underlying this Court's holding in *Fisher*. 461 U. S. 913 (1983). We now affirm in part, reverse in part, and remand for further proceedings.

## III

### A

The Court in *Fisher* expressly declined to reach the question whether the Fifth Amendment privilege protects the contents of an individual's tax records in his possession.[7] The rationale underlying our holding in that case is, however, persuasive here. As we noted in *Fisher*, the Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination. 425 U. S., at 396. Where the preparation of business records is voluntary, no compulsion is present.[8] A subpoena that demands production of docu-

---

[7] In *Fisher*, the Court stated: "Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; for the papers demanded here are not his 'private papers,' . . ." 425 U. S., at 414. We note that in some respects the documents sought in *Fisher* were more "personal" than those at issue here. The *Fisher* documents were accountant's workpapers in the possession of the taxpayers' lawyers. The workpapers related to the taxpayers' individual personal returns. To that extent, the documents were personal, even though in the possession of a third party. In contrast, each of the documents sought here pertained to respondent's businesses.

[8] Respondent's principal argument is that the Fifth Amendment should be read as creating a "zone of privacy which protects an individual and his personal records from compelled production." Brief for Respondent 15. This argument derives from language in *Boyd* v. *United States*, 116 U. S. 616, 630 (1886). This Court addressed substantially the same argument in *Fisher:*

ments "does not compel oral testimony; nor would it ordinarily compel the taxpayer to restate, repeat, or affirm the truth of the contents of the documents sought." *Id.*, at 409. Applying this reasoning in *Fisher*, we stated:

> "[T]he Fifth Amendment would not be violated by the fact alone that the papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications. *Schmerber* v. *California*, [384 U. S. 757 (1966)]; *United States* v. *Wade*, [388 U. S. 218 (1967)]; and *Gilbert* v. *California*, [388 U. S. 263 (1967)]. The accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him. Furthermore, as far as this record demonstrates, the preparation of all of the papers sought in these cases was wholly voluntary, and they cannot be said to contain compelled testimonial evidence, either of the taxpayers or of anyone else. The taxpayer cannot avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to produce contains incriminating writing, whether his own or that of someone else." *Id.*, at 409–410.

This reasoning applies with equal force here. Respondent does not contend that he prepared the documents involun-

---

"Within the limits imposed by the language of the Fifth Amendment, which we necessarily observe, the privilege truly serves privacy interests; but the Court has never on any ground, personal privacy included, applied the Fifth Amendment to prevent the otherwise proper acquisition or use of evidence which, in the Court's view, did not involve compelled testimonial self-incrimination of some sort." 425 U. S., at 399.

In *Andresen* v. *Maryland*, 427 U. S. 463 (1976), the petitioner also relied on *Boyd*. In rejecting his argument, we observed that "the continued validity of the broad statements contained in some of the Court's earlier cases [has] been discredited by later opinions." 427 U. S., at 472. See also *United States* v. *Nobles*, 422 U. S. 225, 233, n. 7 (1975).

tarily[9] or that the subpoena would force him to restate, repeat, or affirm the truth of their contents. The fact that the records are in respondent's possession is irrelevant to the determination of whether the creation of the records was compelled. We therefore hold that the contents of those records are not privileged.[10]

## B

Although the contents of a document may not be privileged, the act of producing the document may be. *Id.*, at 410. A government subpoena compels the holder of the document to perform an act that may have testimonial aspects and an incriminating effect. As we noted in *Fisher:*

---

[9] The Court of Appeals recognized the absence of compulsion in the compilation of the records sought in this case and those sought in *Fisher.* "To be sure, the documents requested here, like those sought in *Fisher*, were voluntarily prepared, and therefore 'cannot be said to contain compelled testimonial evidence' in and of themselves." 680 F. 2d, at 334. The Court of Appeals nevertheless gave our holding in *Fisher* an unduly restrictive reading and found it not to control the outcome in this case.

[10] Accord, *In re Grand Jury Proceedings*, 626 F. 2d 1051, 1055 (CA1 1980) ("The line of cases culminating in *Fisher* have stripped the content of business records of any Fifth Amendment protection"). While not directly on point, *Andresen* v. *Maryland, supra,* is consistent with our holding. In *Andresen*, investigators from a bicounty fraud unit obtained warrants to search the petitioner's office. During the search, the investigators seized several incriminating business records relating to the petitioner's practice as a sole practitioner of real estate law. The petitioner sought suppression of the documents on Fourth and Fifth Amendment grounds. The petitioner based his Fifth Amendment argument on "dicta in a number of cases which imply, or state, that the search for and seizure of a person's private papers violate the privilege against self-incrimination." *Id.*, at 471. The Court dismissed this argument and found the documents not to be privileged because the petitioner "had voluntarily committed to writing" any incriminating statements contained therein. *Id.*, at 473. Although *Andresen* involved a search warrant rather than a subpoena, the underlying principle is the same in this context. If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged.

"Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio* v. *United States*, 354 U. S. 118, 125 (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof." *Id.*, at 410.

In *Fisher*, the Court explored the effect that the act of production would have on the taxpayer and determined that the act of production would have only minimal testimonial value and would not operate to incriminate the taxpayer. Unlike the Court in *Fisher*, we have the explicit finding of the District Court that the act of producing the documents would involve testimonial self-incrimination.[11] The Court of Appeals agreed.[12] The District Court's finding essentially rests on its

[11] The District Court stated:

"With few exceptions, enforcement of the subpoenas would compel [respondent] to admit that the records exist, that they are in his possession, and that they are authentic. These communications, if made under compulsion of a court decree, would violate [respondent's] Fifth Amendment rights. . . . The government argues that the existence, possession and authenticity of the documents can be proved without [respondent's] testimonial communication, but it cannot satisfy this court as to how that representation can be implemented to protect the witness in subsequent proceedings." 541 F. Supp., at 3.

[12] The Court of Appeals stated:

"In the matter *sub judice*, however, we find nothing in the record that would indicate that the United States knows, as a certainty, that each of the myriad documents demanded by the five subpoenas in fact is in the appellee's possession or subject to his control. The most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist—or that the appellee

determination of factual issues. See *United States* v. *Nixon*, 418 U. S. 683, 702 (1974). Therefore, we will not overturn that finding unless it has no support in the record. *Ibid.* Traditionally, we also have been reluctant to disturb findings of fact in which two courts below have concurred. *Rogers* v. *Lodge*, 458 U. S. 613, 623 (1982). We therefore decline to overturn the finding of the District Court in this regard, where, as here, it has been affirmed by the Court of Appeals.[13]

## IV

The Government, as it concedes, could have compelled respondent to produce the documents listed in the subpoena.

---

even is somehow connected to the business entities under investigation—is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself." 680 F. 2d, at 335 (footnote omitted).

[13] The Government concedes that the act of producing the subpoenaed documents might have had some testimonial aspects, but it argues that any incrimination would be so trivial that the Fifth Amendment is not implicated. The Government finds support for this argument in *Marchetti* v. *United States*, 390 U. S. 39 (1968). In *Marchetti*, the Court stated that a party who wishes to claim the Fifth Amendment privilege must be "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Id.*, at 53; see *United States* v. *Apfelbaum*, 445 U. S. 115, 128 (1980). On the basis of the findings made in this case we think it clear that the risk of incrimination was "substantial and real" and not "trifling or imaginary." Respondent did not concede in the District Court that the records listed in the subpoena actually existed or were in his possession. Respondent argued that by producing the records, he would tacitly admit their existence and his possession. Respondent also pointed out that if the Government obtained the documents from another source, it would have to authenticate them before they would be admissible at trial. See Fed. Rule Evid. 901. By producing the documents, respondent would relieve the Government of the need for authentication. These allegations were sufficient to establish a valid claim of the privilege against self-incrimination. This is not to say that the Government was foreclosed from rebutting respondent's claim by producing evidence that possession, existence, and authentication were a "foregone conclusion." *Fisher*, 425 U. S., at 411. In this case, however, the Government failed to make such a showing.

Title 18 U. S. C. §§ 6002 and 6003 provide for the granting of use immunity with respect to the potentially incriminating evidence.[14] The Court upheld the constitutionality of the use immunity statute in *Kastigar* v. *United States*, 406 U. S. 441 (1972).

---

[14] Section 6002 provides:

"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

"(1) a court or grand jury of the United States,

"(2) an agency of the United States, or

"(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

"and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

Section 6003 provides:

"(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

"(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

"(1) the testimony or other information from such individual may be necessary to the public interest; and

"(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

The Government did state several times before the District Court that it would not use respondent's act of production against him in any way. But counsel for the Government never made a statutory request to the District Court to grant respondent use immunity.[15] We are urged to adopt a doctrine of constructive use immunity. Under this doctrine, the courts would impose a requirement on the Government not to use the incriminatory aspects of the act of production against the person claiming the privilege even though the statutory procedures have not been followed.

We decline to extend the jurisdiction of courts to include prospective grants of use immunity in the absence of the formal request that the statute requires.[16] As we stated in *Pillsbury Co.* v. *Conboy*, 459 U. S. 248 (1983), in passing the use immunity statute, "Congress gave certain officials in the Department of Justice exclusive authority to grant immunities." *Id.*, at 253–254 (footnotes omitted). "Congress foresaw the courts as playing only a minor role in the immunizing process . . . ." *Id.*, at 254, n. 11. The decision to seek use immunity necessarily involves a balancing of the Government's interest in obtaining information against the risk that immunity will frustrate the Government's attempts to prosecute the subject of the investigation. See *United States* v. *Mandujano*, 425 U. S. 564, 575 (1976) (plurality opinion). Congress expressly left this decision exclusively to the Jus-

---

[15] Despite repeated questioning at oral argument, counsel for the Government gave no plausible explanation for the failure to request official use immunity rather than promising that the act of producing the documents would not be used against respondent.

[16] Of course, courts generally suppress compelled, incriminating testimony that results from a violation of a witness' Fifth Amendment rights. See *United States* v. *Mandujano*, 425 U. S. 564, 576 (1976); *United States* v. *Blue*, 384 U. S. 251, 255 (1966). The difference between that situation and the Government's theory of constructive use immunity is that in the latter it is the grant of judicially enforceable use immunity that compels the witness to testify. In the former situation, exclusion of the witness' testimony is used to deter the Government from future violations of witnesses' Fifth Amendment rights.

tice Department. If, on remand, the appropriate official concludes that it is desirable to compel respondent to produce his business records, the statutory procedure for requesting use immunity will be available.[17]

## V

We conclude that the Court of Appeals erred in holding that the contents of the subpoenaed documents were privileged under the Fifth Amendment. The act of producing the documents at issue in this case is privileged and cannot be compelled without a statutory grant of use immunity pursuant to 18 U. S. C. §§ 6002 and 6003. The judgment of the Court of Appeals is, therefore, affirmed in part and reversed in part,[18] and the case is remanded to the District Court for further proceedings consistent with this opinion.

*It is so ordered.*

---

[17] Respondent argues that any grant of use immunity must cover the contents of the documents as well as the act of production. We find this contention unfounded. To satisfy the requirements of the Fifth Amendment, a grant of immunity need be only as broad as the privilege against self-incrimination. *Murphy* v. *Waterfront Comm'n*, 378 U. S. 52, 107 (1964) (WHITE, J., concurring); see *Pillsbury Co.* v. *Conboy*, 459 U. S., at 253, n. 8; *United States* v. *Calandra*, 414 U. S. 338, 346 (1974). As discussed above, the privilege in this case extends only to the act of production. Therefore, any grant of use immunity need only protect respondent from the self-incrimination that might accompany the act of producing his business records.

[18] JUSTICE STEVENS states that we should affirm the Court of Appeals decision as a whole because our reasoning is entirely consistent with that of the courts below. See *post*, at 623. As we stated above, see n. 6, *supra*, we read the opinion of the Court of Appeals as holding that the contents of the subpoenaed records were privileged. It is that aspect of the court's opinion that we reverse today. Were we to adopt JUSTICE STEVENS' suggestion, respondent could argue on remand that any grant of use immunity must cover the contents of the records because the records themselves are privileged under the holding of the Court of Appeals. To avoid that result, we must reverse the decision below insofar as it held that the contents of the subpoenaed records are privileged.

618

JUSTICE O'CONNOR, concurring.

I concur in both the result and reasoning of JUSTICE POW-ELL's opinion for the Court. I write separately, however, just to make explicit what is implicit in the analysis of that opinion: that the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind. The notion that the Fifth Amendment protects the privacy of papers originated in *Boyd* v. *United States*, 116 U. S. 616, 630 (1886), but our decision in *Fisher* v. *United States*, 425 U. S. 391 (1976), sounded the death knell for *Boyd*. "Several of *Boyd*'s express or implicit declarations [had] not stood the test of time," 425 U. S., at 407, and its privacy of papers concept "ha[d] long been a rule searching for a rationale . . . ." *Id.*, at 409. Today's decision puts a long overdue end to that fruitless search.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, concurring in part and dissenting in part.

I concur in the Court's affirmance of the Court of Appeals' ruling that the act of producing the documents could not be compelled without an explicit grant of use immunity pursuant to 18 U. S. C. §§ 6002 and 6003. I dissent, however, with respect to that part of the Court's opinion reversing the Court of Appeals. The basis for the reversal is the majority's disagreement with the Court of Appeals' discussion of whether the Fifth Amendment protected the contents of the documents respondent sought to withhold from disclosure. Inasmuch as the Court of Appeals' judgment did not rest upon the disposition of this issue, this Court errs by reaching out to decide it. As JUSTICE STEVENS rightly insists, "'[t]his Court . . . reviews judgments, not statements in opinions.'" *Post*, at 619 (quoting *Black* v. *Cutter Laboratories*, 351 U. S. 292, 297 (1956)).

Contrary to what JUSTICE O'CONNOR contends, *ante*, at 618, I do not view the Court's opinion in this case as having reconsidered whether the Fifth Amendment provides protection for the contents of "private papers of any kind." This case presented nothing remotely close to the question that JUSTICE O'CONNOR eagerly poses and answers. First, as noted above, the issue whether the Fifth Amendment protects the contents of the documents was obviated by the Court of Appeals' rulings relating to the act of production and statutory use immunity. Second, the documents at stake here are business records[1] which implicate a lesser degree of concern for privacy interests than, for example, personal diaries.[2]

Were it true that the Court's opinion stands for the proposition that "the Fifth Amendment provides absolutely no protection for the contents of private papers of any kind," *ibid.*, I would assuredly dissent. I continue to believe that under the Fifth Amendment "there are certain documents no person ought to be compelled to produce at the Government's request." *Fisher* v. *United States*, 425 U. S. 391, 431–432 (1976) (MARSHALL, J., concurring in judgment).

JUSTICE STEVENS, concurring in part and dissenting in part.

"This Court . . . reviews judgments, not statements in opinions." *Black* v. *Cutter Laboratories*, 351 U. S. 292, 297

---

[1] As the majority notes, "each of the documents sought here pertained to respondent's businesses." *Ante*, at 610, n. 7.

[2] See *Couch* v. *United States*, 409 U. S. 322, 350 (1973) (MARSHALL, J., dissenting) ("Diaries and personal letters that record only their author's personal thoughts lie at the heart of our sense of privacy. In contrast, I see no bar in the . . . Fifth Amendment to the seizure of a letter from one conspirator to another directing the recipient to take steps that further the conspiracy. Business records . . . lie between those cases").

(1956).[1]  When both the District Court and the Court of Appeals correctly apply the law, and correctly dispose of the issue before them, I think it is poor appellate practice for this Court to reverse.

The question in this case is whether, without tendering statutory immunity, the Government can compel the sole proprietor of a business to produce incriminating records pursuant to a grand jury subpoena.  Except for the records that are required by law to be kept or to be disclosed to public agencies, the District Court held that production could not be required.  The basis for that decision turned, not on any suggestion that the contents of the documents were privileged, but rather on the significance of the act of producing them. As the District Court explained:

> "[T]he relevant inquiry is not whether the subpoenaed documents on their face reveal incriminating communications, but whether the *act* of producing the documents has communicative aspects which warrant Fifth Amendment protection.  *Fisher* v. *United States*, 425 U. S. 391 . . . (1976).  In yielding to the command of the subpoena, Mr. [Doe] may be required to make any one of several communications.  The mere act of producing the documents may be considered 'a communication of testimonial significance as an admission that the subpoenaed records exist and that they are authentic.'  *In Re Grand Jury Empanelled (Colucci)*, 597 F. 2d 851, 861 (3d Cir. 1979); *Andresen* v. *Maryland*, 427 U. S. 463, 475 . . . (1976) ('the Fifth Amendment may protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information').  In addition, the act of

---

[1] More particularly, we review the judgment that the Court of Appeals entered in this case, not the judgment that it may have entered in some other case, see *ante*, at 609, n. 6, or some isolated statement in its opinion commenting on the holding in some other case.

production may indicate a belief that the papers pro-
duced are those described in the subpoena. *Fisher*, 425
U. S. at 410 . . . .

"With few exceptions, enforcement of the subpoenas
would compel Mr. [Doe] to admit that the records exist,
that they are in his possession, and that they are au-
thentic. These communications, if made under compul-
sion of a court decree, would violate Mr. [Doe's] Fifth
Amendment rights." *In re Grand Jury Empanelled
March 19, 1980*, 541 F. Supp. 1, 3 (NJ 1981).[2]

The Court of Appeals agreed with the District Court's rea-
soning and affirmed. It explained:

"To be sure, the documents requested here, like those
sought in *Fisher*, were voluntarily prepared, and there-
fore 'cannot be said to contain compelled testimonial evi-
dence' in and of themselves. *See Fisher, supra*, 425
U. S. at 409–10 . . . . But the Supreme Court in *Fisher*
went to great lengths to demonstrate that, in certain
situations, the very act of producing subpoenaed records
might amount to an incriminating declaration. *See id.*
at 410–13 . . . ; *see also id.* at 430–34 . . . (Marshall, J.,
concurring in the judgment). And such a situation, we
believe, is present in the dispute at bar.

.          .          .          .          .

"The record contains no explanation by the United
States as to how documents of this sort could be au-
thenticated without the appellee's explicit or implicit
participation. As the district court observed in this
connection,
    'the government can give no assurances that the act of
turning over the documents will not constitute incrimi-

---

[2] Similarly, during oral argument in the District Court, Judge Sarokin
stated: "If you can resolve it to my satisfaction I have no hesitancy in say-
ing, yes, I will direct the turn-over, but only on the condition that the act of
turn-over will not be utilized against the target." App. 35.

nating admissions against [the appellee] either before the grand jury or at a subsequent trial, if he is indicted. The government argues that the existence, possession and authenticity of the documents can be proved without [the appellee's] testimonial communication, but it cannot satisfy this court as to how that representation can be implemented to protect [the appellee] in subsequent proceedings.'

"Appendix at 98 (footnote omitted). Under these circumstances, we are unable to say, as did the Court in *Fisher*, that responding to the subpoenas 'would not appear to represent a substantial threat of self-incrimination.' 425 U. S. at 413 . . . .

"Accordingly, we hold, therefore, that enforcement of these subpoenas would result in a compelled testimonial communication, an outcome neither compatible with the fifth amendment nor consonant with *Fisher*." *In re Grand Jury Empanelled March 19, 1980*, 680 F. 2d 327, 334, 335–336 (CA3 1982).

In addition, the Court of Appeals noted that the Government had had an opportunity to obtain the documents by providing the respondent with statutory immunity, but had declined to do so. It wrote:

"Finally, the United States argues that the district court erred in not compelling the appellee to produce the subpoenaed documents subject to 'the functional equivalent of use immunity with respect to the act of production.' Under this arrangement, presumably the appellee would turn over the requested records to the Government, which in turn would be obligated not to use the appellee's act of production against him in any way.

"We are unpersuaded by the Government's proposition. As the appellee stresses, although the Government, on a number of occasions, suggested to the district court that there were means by which the appellee's act of production could be immunized, no procedure ever

was agreed upon and no formal immunization offer under 18 U. S. C. § 6002 or § 6003 was advanced. Given this failure on the part of the Government to identify with particularity the immunity proposal it envisioned, we cannot say that the district court erred in rejecting this approach, especially in view of the court's finding that 'the government can give no assurances that the act of turning over the documents will not constitute incriminating admissions against [the appellee] either before the grand jury or at a subsequent trial.' Appendix at 98; *see United States* v. *Garcia,* 544 F. 2d 681, 685 n. 4 (3d Cir. 1976)." *Id.,* at 337.

This Court's opinion is entirely consistent with both the reasoning of the Court of Appeals and its disposition of the case. This Court agrees that the subpoena directed to respondent should have been quashed—which is all that the judgment we review today contains. Accordingly, the Court of Appeals' judgment should be affirmed.

To the extent that the Court purports to reverse the judgment of the Court of Appeals, I respectfully dissent.