CIRILLO, Judge,
dissenting.
I respectfully dissent.
This year, the mighty fifth amendment to the United States Constitution, the “hallmark of our democracy,” Miranda v. Arizona, 384 U.S. 436, 460, 86 S.Ct. 1602, 1620, 16 L.Ed.2d 694 (1966) (citation omitted), celebrates its two hundredth birthday. However, in the current climate of erosion of the fundamental rights guaranteed us by the first ten amendments of the Constitution,[1] I fear the party may be short-lived.
Traditionally, we have recognized the uniquely personal privilege[2] against self-incrimination as a “right to a private enclave where [an individual] may lead a private life.” Id. See also Beilis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Boyd v. United *184 States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). However, the fifth amendment is not “a general protector of privacy.” Fisher v. United States, 425 U.S. 391, 408-409, 96 S.Ct. 1569, 1579-1580, 48 L.Ed.2d 39 (1976). Not all “private” evidence is free from government scrutiny; rather, only that evidence which is both compelled and testimonial in nature may be withheld by asserting the privilege against self-incrimination. Note, Organizational Papers And The Privilege Against Self-Incrimination, 99 Harv. L.Rev. 640, 642 (1986). Today, the majority fails to recognize that “[T]he [Fifth Amendment] privilege protects an accused ... from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature ...” Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966) (emphasis supplied). See, e.g., Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); Fisher, supra; Bellis, supra; Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946); ICC v. Baird, 194 U.S. 25, 24 S.Ct. 563, 48 L.Ed. 860 (1904); Boyd, supra.
In the case at hand, the majority holds that Arentzen cannot assert the privilege with regard to his yet-to-be created accounting. See 20 Pa.C.S. § 3501.1. Consequently, Arentzen’s fifth amendment privilege is reduced to mere verbiage. In relying upon the required records exception to compel Arentzen to testify against himself by creating and producing an account of his actions while serving as executor and attorney to Baehr’s estate, I believe that the majority erroneously extends the parameters of the required records exception and, sadly, further erodes the protection guaranteed each individual by the fifth amendment.
The required records exception, or doctrine, was first enunciated in Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). “It developed at a time when the Court assumed that the government could not subpoena the self-incriminating private papers of an individual who has the right to claim the privilege.” Saltzburg, The Required Records Doctrine: Its Lessons For The Privilege *185 Against Self-Incrimination, 53 Chi.L.Rev. 6, 10 (1986). Essentially, the exception applies to certain organizational documents, recorded pursuant to a government regulation, which have “public aspects.” Fisher, supra; Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); Shapiro, supra. The exception is inapplicable if the government regulations “are directed almost exclusively to individuals inherently suspect of criminal activities.” Grosso, 390 U.S. at 68, 88 S.Ct. at 713 (1968). In other words, if the purpose of the government is investigatory not regulatory, the required records exception does not apply to the documents. United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); Fisher, supra; Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Shapiro, supra. The rationale behind the doctrine is transparently facile: because they are required for regulatory purposes the records are considered to be the equivalent of voluntary testimony and are not, therefore, compelled in the fifth amendment sense, despite the records’ testimonial nature. See Fisher, supra (Brennan, J., concurring); Shapiro, supra (Frankfurter, J., dissenting).
As noted by the majority, the doctrine is applicable if: 1) the records subpoenaed by the government are those which are required to be kept by the individual pursuant to government regulation; 2) the records are of a type which the regulated party customarily keeps; and 3) the records themselves possess certain criteria which make them analogous to public records. Grosso, 390 U.S. at 66, 88 S.Ct. at 712.
On its face, the accounting required of Arentzen under the Pennsylvania Probate Estates and Fiduciary Code, 20 Pa.C.S. § 101, et seq. (“Probate Code”) would appear to fall within the exception. However, after careful study, I believe that the accounting required of Arentzen, in his capacity as executor of a decedent’s estate, is not the type of record to which the exception applies. At this time, no accounting exists and I cannot find any support for the majority’s proposition that the exception can compel an *186 individual to create a record in the nature of an accounting once a court has found that such a record may be incriminating. I believe that such an interpretation of the exception is unduly broad and I am reluctant to extend the exception beyond its present parameters. I can conceive of little distinction between compelling an individual person to orally testify against himself, which clearly the court cannot do except under grant of immunity, and compelling him to create a written record of his management of a decedent’s estate under the guise of the required records exception. “[I]t is the Fifth Amendment’s historical function [to protect an individual] from compulsory incrimination through his own testimony or personal records.” Fisher, 425 U.S. at 419, 96 S.Ct. at 1585 (Brennan, J., concurring) {quoting United States v. White, 322 U.S. 694, 701, 64 S.Ct. 1248, 1252, 88 L.Ed. 1542 (1944)).
Furthermore, even if the exception could possibly be construed to require an individual to create the records sought by the court in this instance, I do not believe that the accounting required by the Probate Code is the type of record to which the exception applies. Traditionally, the exception has applied to documents of transactions; i.e., receipts, telephone records, bank statements, cancelled checks, ledgers,, petty cash books, paid bills, payroll records, contracts, and tax records. See Braswell, supra; Doe, supra; Fisher, supra; Grosso, supra; Marchetti, supra; Shapiro, supra. An executor’s accounting, however, is more akin to an attorney’s work product than it is to these “public” records which have historically been found to be outside the privilege. The daily management records of a sole proprietor or practitioner are, of course, testimonial by their very nature. Doe, supra; Braswell, supra. Somehow, these testimonial records transmogrify into “public” records simply because a regulatory agency requires that they be kept. Braswell, supra; Doe, supra; Fisher, supra; Shapiro, supra. I disagree. The act of regulation does not destroy the essential nature of an accounting as a private record. “If records merely because required to be *187 kept by law ipso facto become public records, we are indeed living in glass houses.” Shapiro, 335 U.S. at 34, 68 S.Ct. at 1393 (Frankfurter, J., dissenting).
Moreover, although the privilege has been eroded by numerous exceptions, see generally Note, Organizational Papers, supra, I believe that the privilege continues to cover the business records of the sole proprietor or practitioner when a subpoena forces the sole proprietor or practitioner to “repeat or affirm the truth of the contents of the documents sought.” Doe, 465 U.S. at 610-611, 104 S.Ct. at 1241. It is undisputed that subpoenaing such records makes them “compelled” in the Fifth Amendment sense.[3] Doe, supra; Fisher, supra. I note that when Arentzen voluntarily resigned as executor and attorney for the estate of Baehr his attorney, Dennis R. Primavera, turned over the records of the estate to its present executor, Meridian Bank. These records are therefore apparently available to the Orphans’ Court for its review. Requiring Arentzen to now create and produce an account of his management of the estate would compel him to restate, repeat, or affirm the truth of the contents in those records now in the possession of Meridian and available to the court. I am convinced that this action is the very essence of compelled testimony which is protected by the privilege. Doe, supra; Fisher, supra.
Based on the foregoing, I conclude that Arentzen may rightfully assert his fifth amendment privilege against self-incrimination with regard to the creation and production of an accounting of the estate of Baehr. Therefore, I would find that the trial court abused its discretion in finding Arentzen in contempt for failing to comply with its subpoe *188 na, and I would vacate the order of the trial court. Finally, I would remind this court that
[i]t has been repeatedly decided that [the Fifth Amendment] should receive a liberal construction, so as to prevent stealthy encroachment upon or ‘gradual depreciation’ of the rights secured by [it], by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers.
Fisher, 425 U.S. at 417, 96 S.Ct. at 1584 (Brennan, J., concurring) {quoting Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921)). I believe that today’s majority opinion represents yet another “stealthy encroachment” on the fifth amendment on behalf of increasingly pervasive government regulations and judicial convenience. The cost of this encroachment is a further diminution of our personal liberties as guaranteed by the Bill of Rights.

. These rights are also embodied in the Constitution of Pennsylvania, art. I, §§ 1-26.

. The privilege is not available to corporations or other organizational entities but only to individuals. See Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Furthermore, the privilege traditionally applies only to private papers and documents. See Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In the last fifteen years, the Supreme Court has further defined and restricted the privilege, concluding that it is not the contents of private papers which are privileged, but rather their testimonial nature and the compelled act of producing the papers against which the privilege may be asserted. See Braswell, supra; United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). See generally Saltzburg, The Required Records Doctrine: Its Lessons For The Privilege Against Self-Incrimination, 53 Chi.L.Rev. 6 (1986); Note, Organizational Papers And The Privilege Against Self-Incrimination, 99 Harv.L.Rev. 640 (1986); Note, Fifth Amendment Limitations On The Compelled Production Of Evidence, 25 Am.Crim.L.Rev. 509 (1988).

. A sole proprietor or practitioner may also resist a subpoena for business records on the ground that the act of producing the records would entail testimonial self-incrimination. Braswell v. United States, 487 U.S. 99, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988); United States v. Doe, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Instantly, I do not believe that the act of producing an accounting of the estate would be incriminating in and of itself and therefore have not addressed this additional basis for assertion of the privilege.