41 F.3d 1514
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
GREGORY MAY & ASSOCIATES, Defendant-Appellant.
 No. 94-15972.
 , Ninth Circuit.
Submitted Sept. 15, 1994.*
Decided Nov. 9, 1994.
 
 1
 Before: FARRIS and BEEZER, Circuit Judges, and MUECKE, District Court Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant Gregory May & Associates ("GMA") appeals the United States District Court's decision to deny a request for a stay of enforcement of a subpoena issued by the Inspector General of the Department of Transportation in connection with an investigation of contracts between the DOT and GMA. The district court did not err and we affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 4
 This appeal involves whether the custodian of corporate records may resist a subpoena for such records on the grounds that the act of production would incriminate him in violation of the Fifth Amendment, and whether the production of the documents violates a state psychotherapist-patient privilege and the constitutional right to privacy.
 
 
 5
 The subpoena enforcement action was brought by the Department of Transportation's ("DOT") Inspector General ("IG") in connection with an investigation of contracts between DOT and GMA. GMA is a psychological corporation that provides training workshops to institutional and personal clients. GMA has provided various management training courses to the United States DOT since 1984. From 1986 through April, 1993, GMA received more than 200 direct procurements totaling more than $41.4 million from DOT for training programs to the Federal Aviation Administration ("FAA").
 
 
 6
 In early 1993, the IG began an investigation of GMA. The IG received various allegations of wrongdoing concerning the GMA courses provided to DOT officials. The allegations involve violations of ethics and procurement regulations and Federal Personnel Manual guidelines. As part of this ongoing investigation, the IG issued to GMA a subpoena on August 3, 1993. For the period from January 1, 1984 through August 2, 1993, the subpoena requested supporting documentation for GMA contracts or subcontracts with DOT, including training materials, billings, travel and expense records, GMA business records, mailing lists, GMA's articles of incorporation and stockholder records, the identities of GMA shareholders, officers, employees, and accountants.
 
 
 7
 The IG sought documents in eight categories.[1] Appellant agreed to produce documents in categories one through five, seven and eight, and objected to producing documents in category six arguing that the request was overly broad and the production was unduly burdensome. On September 3, 1993, GMA produced some documents in response to the subpoena. On January 31, 1994, the IG filed this lawsuit to enforce the subpoena for all categories of documents not provided.
 
 
 8
 The lawsuit was assigned to Magistrate Judge Peter Nowinski. On March 30, 1994, at a hearing before Magistrate Judge Nowinski, the government's counsel denied GMA's request for Dr. May's immunity. On April 15, 1994, Magistrate Judge Nowinski held that the government need not give Dr. May act of production immunity. Magistrate Judge Nowinski found that the financial information and travel records were relevant to the investigation, ordered GMA to produce the mailing list and also required the IG to redact all identifying information concerning individuals not implicated in the investigation.
 
 
 9
 On May 31, 1994, the district court affirmed the Magistrate Judge's decision and denied a stay pending appeal. The district court rejected GMA's privilege argument reasoning that is not cognizable in a federal nondiversity proceeding. The district court also reasoned that the privilege is conditional and would be overcome here by the federal interest in obtaining these records in connection with DOT's investigation. The district court concluded that requiring document production by GMA absent act of production immunity would not violate Dr. May's Fifth Amendment right against self-incrimination, and that the facts of this lawsuit did not fit the narrow exception to the general rule the Supreme Court left open in Braswell v. United States, 487 U.S. 99, 118, n. 11 (1988). On June 1, 1994, the District Court required GMA to produce the documents by June 8, 1994. GMA noticed this appeal on June 3, 1994. On June 13, 1993, this court granted GMA's motion for a stay of the District Court's order pending appeal and further ordered that the appeal be expedited.
 
 DISCUSSION
 
 10
 I. Whether the district court should have required act of production immunity for Dr. May
 
 
 11
 The act of production immunity doctrine evolved in response to Fifth Amendment concerns about the possible testimonial significance that could result from acknowledging that documents exist or by producing or authenticating them. See Fisher v. United States, 425 U.S. 391, 410 (1976):
 
 
 12
 The act of producing evidence in response to a subpoena nevertheless has communicative aspects of its own, wholly aside from the contents of the papers produced. Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer.
 
 
 13
 Fisher v. United States, 425 U.S. at 410.
 
 
 14
 It is up to the government to decide whether to grant immunity. See United States v. Doe, 465 U.S. 605, 616 (1984). Although a court may refuse to require production of documents based on Fifth Amendment concerns, it may not compel the government to grant such immunity. Id.
 
 
 15
 GMA's principal is Dr. Gregory May, a psychotherapist and management trainer. Due to Dr. May's position in the corporation, he argues that any factfinder would conclude that he produced the GMA documents, and therefore, he should be allowed production immunity.
 
 
 16
 The general rule is that there is no self-incrimination claim on behalf of corporations because artificial entities are not protected by the Fifth Amendment. Bellis v. United States, 417 U.S. 85, 88 (1974). GMA argues that the facts of this case fit within a narrow exception to the general rule, articulated in Braswell:
 
 
 17
 We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation, that the jury would inevitably conclude that he produced the records.
 
 
 18
 487 U.S. at 118, n. 11.
 
 
 19
 Appellant failed to carry his burden to establish that he falls within this narrow exception. May is not the only corporate officer nor did he establish that a jury would inevitably conclude that he produced the records. The district court was correct in concluding that Dr. May failed to fulfill his burden of demonstrating that the production of the records without act of production immunity for Dr. May would abridge May's Fifth Amendment right against forced self-incrimination. See United States v. Brown, 918 F.2d 82, 84 (9th Cir.1990). GMA never showed how the act of producing such documents would have communicative aspects as to Dr. May or how such aspects would tend to incriminate Dr. May. Under the facts of this case, this Court declines to recognize an exception to the general rule that a custodian of corporate documents may not claim a Fifth Amendment privilege for the act of producing corporate documents. The district court did not err.
 
 
 20
 II. Whether the district court erred in not allowing Dr. May to assert an evidentiary privilege created by state law.
 
 
 21
 GMA also argues that the district court erred in determining that GMA was not entitled to withhold its mailing lists based on a psychotherapist--patient privilege predicated on a state statute. See Cal.Evid.Code Sec. 1014. Such a privilege has not been recognized under federal law in this Circuit. In Re Grand Jury Proceedings, 867 F.2d 562 (9th Cir.1989).
 
 
 22
 Under Rule 501 of the Federal Rules of Evidence:
 
 
 23
 Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness [or] person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person ... shall be determined in accordance with State law.
 
 
 24
 The purpose of Rule 501 is to " 'provide the courts with the flexibility to develop rules of privilege on a case-by-case basis.' " Trammel v. United States, 445 U.S. 40, 47 (1980) (citations omitted).
 
 
 25
 The Magistrate Judge ordered the government to redact any and all identifying information regarding individuals not implicated in the IG's investigation. GMA failed to establish that the documents pertained to patients who engaged in confidential communications with a psychotherapist in the course of obtaining diagnosis or treatment for an emotional or mental condition. Thus, the district court did not err. The evidentiary privilege created in California is inapplicable to the facts in this situation.
 
 III. Constitutional Right To Privacy
 
 26
 The constitutional right to privacy is a conditional right which may be infringed upon a showing of proper governmental interest. Doe v. Attorney General, 941 F.2d 780, 796 (9th Cir.1991). In civil suits there is a substantial constitutional right of privacy that extends to psychiatrist-patient communications. See Caesar v. Mountanos, 542 F.2d 1064, 1067, n. 9 (9th Cir.1976). Although the right is substantial, it is conditional rather than absolute and limited impairment of the right may be allowed if properly justified. Id. at 1068. The state's interest must be balanced against the patient's right to private medical records. Hawaii Psychiatric Soc. v. Ariyoshi, 481 F.Supp. 1028, 1043 (D.Haw.1979).
 
 
 27
 The government seeks mailing lists containing names and addresses of participants in the courses offered by GMA. We will not disturb the district court's conclusion that the government's interest in investigating corruption allegations outweighs any privacy interest implicated by the mailing lists, with the method of redaction ordered by the Magistrate Judge affording reasonable accommodation to any limited privacy interests that may exist.
 
 
 28
 We affirm.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Honorable C.A. Muecke, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 (1) Those categories are: all course materials, proposals, and instructor notes for GMA's DOT contracts; (2) all documents showing the credentials of GMA's associates; (3) all GMA travel expense receipts for contract DTFA01-92-C-00063; (4) all GMA documents relating to Work Order 27 of Contract DTFA01-89-Y-01030; (5) all GMA documents relating to more than 50 purchase order contracts; (6) all GMA financial and travel records; (7) all GMA mailing and assistant lists; and (8) all GMA well-being agreements. The government seeks these documents in order to investigate allegations that officials with influence over procuring management training contracts may have (1) maintained personal relationships with GMA, (2) attended personal GMA workshops at no cost, at a discount, or with the help of a special installment payment plan, (3) acted as GMA contact person and agents for GMA's personal workshops, (4) housed Dr. May during his provision of services contracted for by the FAA, (5) sponsored or endorsed GMA personal workshops, (6) received gratuities from GMA; (7) procured GMA courses for management training without first reviewing the course materials to determine if GMA's techniques would be appropriate, (8) awarded contracts to GMA in violation of competitive bid requirements and (9) allegations that GMA may have inflated travel costs related to contract DTFA01-92-C-00063, work order 27 of contract DTFA01-89-Y-0130 and nine purchase orders for training services