# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2811

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Stephen B. Teeple, | * | |
| | * | [TO BE PUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 14, 2002

Filed: April 18, 2002

_____

Before BYE, HEANEY, and RICHARD S. ARNOLD, Circuit Judges.

_____

BYE, Circuit Judge.

This case is about the Fifth Amendment privilege against self-incrimination as applied to documents. Stephen B. Teeple has been incarcerated for more than eight months because he refuses to turn over business documents requested by the Internal Revenue Service (IRS), in violation of a court order. His incarceration continues to this very day. For reasons explained below, we affirm the district court's[1] contempt citation and order of incarceration.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

I

This case originated in 1997. On November 24 of that year, Teeple received a notice from the IRS informing him of his failure to file tax returns. The IRS was conducting an investigation into his tax liability for 1996 and 1997. He did not respond to the notice. Almost a year later, the IRS issued him an administrative summons, which requested specified business documents and required him to appear before an IRS agent on September 18, 1998. Teeple failed to comply with that summons, and on November 20, 1998, the government filed a petition in federal court to enforce the summons. The matter was referred to a magistrate judge,[2] and on October 8, 1999, the magistrate judge issued a report finding the issuance of the summons proper and recommending its enforcement. On November 12, 1999, the district court issued an order overruling Teeple's objections to the magistrate judge's report and directing him to comply with the summons within 60 days.

Teeple filed a motion to dismiss, arguing he had complied with the summons. The government opposed the motion and a hearing regarding the extent of the taxpayer's compliance was held on April 3, 2000, during which the government presented evidence of Teeple's non-compliance. His response was "he is not a taxpayer." The court took a recess for the parties to discuss the matter in the hope of resolving it. After the recess, Teeple agreed, on the record, to produce the requested documents and records. Based on this representation, the magistrate judge recessed the proceeding until June 8, 2000.

On June 8, 2000, the government argued to the magistrate judge that Teeple still had not complied with the summons. He responded that he had complied with the summons as best he could, stating the requested documents and records were with

_____

[2]The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

-2-

him in the courtroom, but conceded he had not produced them. In fact, he still refused to produce them, declaring he was not obligated to produce the documents because he did not owe taxes, a determination based on his belief that money earned from the "common law practice of chiropractic" is not taxable income. He also refused to produce the documents, invoking his Fifth Amendment privilege against self-incrimination.

On June 19, 2000, the magistrate judge issued yet another report recommending that Teeple be ordered to appear before the district court to face contempt proceedings. He objected. On August 2, 2000, the district court found him to be in contempt and gave him until August 12, 2000, to comply with the court's order. Following that order, Teeple *partially* complied with the IRS summons. On February 26, 2001, another hearing was held before the magistrate judge, after which another report and recommendation was issued. In that March 27, 2001, report the magistrate judge recommended incarceration for his contempt until he complied with the court's order. The district court adopted the report and recommendation, but held a hearing on June 25, 2001, before ordering Teeple's incarceration. At that hearing, he admitted he had not produced the records ordered by the court. The district court concluded Teeple's Fifth Amendment privilege against self-incrimination would not be violated, found him in contempt once again, and ordered him remanded to the custody of the United States Marshal's Service until he turned over the requested documents.

II

We have jurisdiction to hear this interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We review both the grant and the denial of a contempt order for abuse of discretion, but an order of contempt is reviewed more searchingly. Indep. Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998).

## III

A.      The Act of Production Doctrine

In refusing to turn over the requested documents, Teeple relies on the act of production doctrine. This doctrine was first recognized by the Supreme Court in Fisher v. United States, which noted the "act of producing evidence" may have communicative aspects that can violate the Fifth Amendment. 425 U.S. 391, 410-13 (1976). Subsequently, the Court maintained that, even when the contents of documents or records are unprotected by the Fifth Amendment, see United States v. Doe, 465 U.S. 605, 612 & n.10 (1984), the Fifth Amendment's protections may nevertheless be implicated by the very act of producing the documents or records. Id. at 612. This is so, the Court reasoned, because the act of complying with the government's request may have testimonial aspects and an incriminating effect. Id. As the Court explained, "[c]ompliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena." Fisher, 425 U.S. at 410 (citation omitted).

However, not every act that communicates statements of fact rises to the level of a protected communication under the Fifth Amendment. For example, if the existence, possession, and authenticity of the documents are a "foregone conclusion" and the taxpayer "adds little or nothing to the sum total of the Government's information" by his act of producing the documents, the taxpayer's Fifth Amendment privilege is not violated "because nothing he has said or done is deemed to be sufficiently testimonial for purposes of the privilege." Fisher, 425 U.S. at 411. Therefore, where the government already possesses the knowledge that would otherwise be communicated, "[t]he question is not of testimony but of surrender." Id.

-4-

B.      Teeple's Act of Production Claim

The crux of Teeple's argument on appeal concerns the potential incrimination that will result if he is forced to turn over the requested documents. The act of producing the documents, he believes, could reasonably be used against him in a criminal prosecution. He points to the government's refusal to grant him immunity, and a letter sent by the IRS stating "[p]lease contact us immediately, or we may have to take the following actions: 1. Summon you to bring us your books and records. 2. *Bring criminal proceedings which may include a fine, imprisonment, or both if you willfully fail to file a tax return*." The government, however, maintains that Teeple's case is purely a civil matter. There has been no criminal referral made within the IRS regarding his case, and the government represents the criminal division of the IRS is not involved in this case.

We suspect Teeple's fear of prosecution is probably more real than remote given his belief that money he has earned from the "common law practice of chiropractic" is not taxable income. See Ueckert v. Comm'r of Internal Revenue, 721 F.2d 248, 250 (8th Cir. 1983) (observing that "the Fifth Amendment privilege applies only where the danger of self-incrimination is real and appreciable, not remote and speculative"). Although the government represents that the criminal division of the IRS is not involved, little comfort can be found in this representation. Teeple is a tax-protestor. Presented with the question whether the government will prosecute him for willful failure to file an income tax return (or some other tax crime), we are constrained to answer *perhaps*. He is somewhat more likely to be prosecuted (than others) given his irrational belief, coupled with the considerable time and energy the government has already devoted to this case. Prosecuting him will surely send a message to other would-be tax-protestors, a fact that doubtless has not gone unnoticed by the government.

Our decision here, however, does not hinge upon whether Teeple's fear of prosecution is real because we believe his act of producing the documents is insufficiently testimonial. The act of producing the requested documents in this case falls within what the Court in Fisher described as a "foregone conclusion." In Fisher, the Court explained that where the "existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers," the Fifth Amendment offers no protection. Id. at 411.

The district court's order states Teeple "has never explained how his act of production will provide the Government with information . . . ," and that "[t]he IRS already knows the documents and records exist, that Respondent had them (or controls them), and that they are authentic. Respondent's production of the documents will not add to this knowledge." The district court thus concluded that Teeple's Fifth Amendment privilege against self-incrimination would not be violated because his act of producing the documents would add little or nothing to the sum total of the government's information. We agree.

At the June 8, 2000, hearing Teeple testified that he possessed the documents requested in the summons; that he had received income during 1996 and 1997, including fees from various HMOs in his chiropractic business; that he had been paid by insurance companies as part of fees he received in his chiropractic business during those years; that he deposited some of the fees in bank accounts; that he was aware of Form 1099s which indicated he had received payments from various businesses during those years and that he received such payments; that he had not filed federal income tax returns in 1996 and 1997; and that he did not believe he was liable to pay federal income tax. See Appellant's App. 9-14. Teeple also testified that he kept books and records—which he called "personal accounting ledgers"—that demonstrated the amount of money he received from his chiropractic business in 1996

and 1997. Id. at 13. Teeple admitted he brought to court all the books and records that were requested in the summons. Id. at 6.

Teeple rejects the comparison to Fisher and contends his case is analogous to Doe and United States v. Hubbell, 530 U.S. 27 (2000). We disagree. In both cases Teeple favors, the government knew far less about the documents and records it sought than in the present case. See Doe, 465 U.S. at 614 n.13; Hubbell, 530 U.S. at 44. We think the government's knowledge of the requested documents in Teeple's case is more akin to the government's knowledge in Fisher, not Doe or Hubbell.

Because Teeple has admitted to the existence, possession and location of the documents requested by the IRS, the only remaining question is whether those documents can be authenticated without reference to his act of production. We believe they can be. Teeple has already admitted, through his own oral testimony (not through the act of producing), that he kept personal accounting ledgers for 1996 and 1997. These ledgers can be authenticated by handwriting experts, see United States v. Fishman, 726 F.2d 125, 127 (4th Cir. 1983), or by Federal Rule of Evidence 901(b)(4), see United States v. Rue, 819 F.2d 1488, 1494 (8th Cir. 1987) (concluding that the authenticity of patient cards can be established independently, citing Fed. R. Evid. 901(b)(4)).

IV

Because Teeple's act of producing the requested documents would not serve to prove their existence, location or authenticity, the ordered production of them does not violate Teeple's Fifth Amendment privilege against self-incrimination. We have considered Teeple's remaining argument and find it to be without merit. Accordingly, we affirm the district court's contempt citation and order of incarceration.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.