The State of Ohio, Appellant, *v.* Pussycat Cinex; Hardy, Appellee.

(No. 73-175—Decided December 5, 1973.)

110

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. George J. Sadd*, for appellant.

*Mr. James R. Willis*, for appellee.

CORRIGAN, J. The single issue presented by this appeal is whether appellee, Hardy, should have complied with the court's order to produce the films in question.

The cases clearly establish that a corporation cannot claim the privilege against compulsory self-incrimination. *United States* v. *Kordel* (1970), 397 U. S. 1.

Similarly, a corporate officer may not withhold testimony or documents on the ground that his corporation would be incriminated, nor may the custodian of corporate books or records withhold them on the ground that he personally might be incriminated by their production. *Hale* v. *Henkle* (1906)), 201 U. S. 43; *Wilson* v. *United States* (1911), 221 U. S. 361; *Essgee Co.* v. *United States* (1923), 262 U. S. 151; *Curcio* v. *United States* (1957), 354 U. S. 118. Likewise, in *McPhaul* v. *United States* (1960), 364 U. S. 372, rehearing denied, 364 U. S. 925, the Supreme Court of the United States held that books and records kept in a representative rather than a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the records might tend to incriminate their custodian personally.

The court, in *McPhaul*, also reiterated the rule that a court will not imprison a witness for failure to produce documents which he does not have, unless he is responsible for their unavailability or is impeding justice by not explaining what happened to them. See, also, *Jurney* v. *MacCracken* (1935), 294 U. S. 125; *United States* v. *Goldstein* (1939), 105 F. 2d 150; *United States* v. *Bryan* (1950), 339 U. S. 323.

More importantly, in *McPhaul*, the court held that it was incumbent upon a defendant in a contempt proceeding to show that the records called for by a subpoena did not exist, or that they were not in the defendant's possession or subject to his control at the time their production was requested.

In the case at bar, the Court of Appeals based its judgment upon the ground that Hardy did not have possession of the films in question nor were they subject to his control at the time the trial court orally ordered him to produce them at the adversary hearing. That judgment is erroneous and contrary to the evidence clearly presented in the record.

The Court of Appeals' judgment ignores the trial court's valid order, dated November 4, 1971, which prohibits the Pussycat Cinex, its owners, management, operators and employees from concealing, destroying, tampering with, or altering, or removing the five films in question from the premises of the theater. The record establishes that this order was served upon an employee of the theater on the afternoon of November 4th; that the order was seen by the manager, Hardy; and that the films in question were on the premises of the theater at that time.

At the close of the adversary hearing, on November 5th, Hardy was ordered to produce the films. Considering the oral order of the court at that hearing, together with the court's written order of the preceding day, it is clear that Hardy was responsible for the alleged unavailability of the films, and that he failed to introduce any evidence to the contrary.

It cannot be said that the mode of procedure exercised by the trial court in this case was violative of Hardy's rights under the First Amendment, since the state has a legitimate interest in preserving the films as evidence in a criminal proceeding, even to the point of seizure, pending a prompt adversary hearing on the obscenity issue. *Heller* v. *New York* (1973), 413 U. S. 483, 37 L. Ed. 2d 745.

In the present case, the trial court did not interfere with Hardy's First Amendment right to the distribution of the films; it merely exercised its legitimate right to preserve the films as evidence in a subsequent criminal proceeding. Upon the basis of evidence in the record, the judgment of the Court of Appeals is reversed and this cause is remanded to the Court of Common Pleas for execution of sentence.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.