The STATE of Ohio, Appellant,

v.

ARONSON et al., Appellees.

[Cite as State v. Aronson (1993), 91 Ohio App.3d 714.]

Court of Appeals of Ohio,
Summit County.

No. 16272.

Decided Nov. 24, 1993.

*Lynn C. Slaby*, Summit County Prosecuting Attorney, and *Philip D. Bogdanoff*, Assistant Prosecuting Attorney, for appellant.

*James Burdon* and *Ed Pierce*, for appellees.

---

REECE, Judge.

The defendants-appellees, Stanley P. and Barry Aronson, were arrested on April 9, 1993, and charged with two felony counts of violating Ohio's bingo statute, R.C. 2915.09, based on their involvement with an organization known as Akron Square Bingo. The state alleged that Barry Aronson was the operator of the collective entity known as Akron Square Bingo ("Akron Square") and that he and his brother Stanley committed multiple felonies while conducting bingo games for the charitable benefit of Revere Road Synagogue ("Synagogue").

On April 15, 1993, six days after they were arrested, the state filed grand jury subpoenas ordering the Aronsons to appear before the grand jury and bring with them the records of Akron Square. The Aronsons moved the trial court to quash the subpoenas. They claimed that an appearance before the grand jury and the production of the requested documents would violate their rights against self-incrimination under the Fifth Amendment because they had already been charged with criminal offenses. The trial court granted the Aronsons' motion to quash the subpoenas.

On April 28, 1993, the Aronsons were indicted by the grand jury on multiple counts related to the operation of bingo games. One day later, the state filed a second set of grand jury subpoenas ordering the Aronsons, in their representa-

tive capacities, to produce the Akron Square records. The second set of subpoenas did not require the Aronsons to personally appear before the grand jury. The Aronsons again moved the trial court to quash the subpoenas.

The trial court heard arguments on the Aronsons' first and second motions to quash on April 26 and May 3, 1993, respectively. The transcripts from these hearings indicate that in February 1993 the state lawfully searched the Synagogue, Barry's home and Stanley's home and office. The state did not find the Akron Square records that ultimately became the subject of the grand jury subpoenas.

At the hearings on the motions to quash, the state argued that the Aronsons were the custodians of the Akron Square records and therefore could not invoke the Fifth Amendment because under *Braswell v. United States* (1988), 487 U.S. 99, 110, 108 S.Ct. 2284, 2291, 101 L.Ed.2d 98, 109, a custodian's act of producing records was not a personal act, but instead a representative act for a collective entity that was not protected by the privilege against self-incrimination. To establish the Aronsons' status as custodians, the state asserted that Barry was listed as the bingo game operator on the Synagogue's bingo application filed with the Attorney General and that Arthur Taub, the president of the Synagogue, had indicated that both Barry and Stanley had possession of the Akron Square records. The state did not present the state bingo application or the testimony of Arthur Taub at either of the hearings.

On May 3, 1993, the trial court quashed the second set of grand jury subpoenas, finding that (1) the Aronsons could not be compelled to appear before the grand jury because they had already been indicted; and (2) the state did not present any evidence at the hearings establishing that Akron Square was a charitable organization under R.C. 2915.10 or that Barry and Stanley were the custodians of Akron Square's records. On May 21, 1993, the grand jury issued supplemental indictments against the Aronsons charging them with additional felonies. The grand jury apparently continued its investigation into Akron Square after the supplemental indictments were issued.

On May 6, 1993, the state sought from this court leave to appeal the trial court's order, pursuant to R.C. 2945.67(A).[1] On June 7, 1993, we granted the state's motion for leave to appeal. The state has presented one assignment of error:

"The trail court committed error when it quashed the state's subpoenas in this case."

---

1. R.C. 2945.67(A) provides in pertinent part that "[a] prosecuting attorney * * * may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *."

The state argues that the trial court improperly placed upon it the burden of establishing that the Aronsons were the custodians of the Akron Square records. The state contends that given the broad investigatory powers of the grand jury, the Aronsons had the burden of proving that they were privileged to withhold the subpoenaed documents from inspection by the grand jury. The state relies upon *United States v. (Under Seal)* (C.A.4, 1985), 774 F.2d 624, 626–627, and *In re Grand Jury Proceedings* (C.A.6, 1985), 754 F.2d 154, 155–156, to support this proposition. Those courts held that the government does not have to make a showing of need before it can subpoena documents from the attorney of a person who is the target of a grand jury investigation. Instead, the courts placed upon the target party the burden of showing that the attorney-client privilege protected the documents' contents from being disclosed to the grand jury.

The cases cited by the state, however, do not support its position in the case before us. In both of the cited cases, the courts were concerned solely with whether the contents of the subpoenaed documents were privileged and not whether the act of producing the documents would incriminate the party ultimately required to present them to the grand jury. In addition, both cases involved subpoenas issued to a third party, namely the target party's attorney. Here, the subpoenas were issued directly to the Aronsons, actual targets of the grand jury investigation. Thus, given the factual differences, the federal cases cited by the state are not determinative on this issue.

Based on this distinction, the Aronsons do not contend that the contents of the Akron Square records are protected from disclosure. Rather, the Aronsons argue that because they are indicted defendants, the state must make at least a minimal showing that they are the custodians of the Akron Square records before they can be compelled to produce those records under *Braswell*. We agree.

The Aronsons concede that the custodian of a collective entity may not resist, on Fifth Amendment grounds, a subpoena *duces tecum* directed at the collective entity's records. *Braswell, supra,* 487 U.S. at 109–110, 108 S.Ct. at 2290–2291, 101 L.Ed.2d at 109; *State v. Pussycat Cinex* (1973), 36 Ohio St.2d 108, 112, 65 O.O.2d 299, 301, 304 N.E.2d 374, 377. Additionally, the state agrees that " 'the government may not in the absence of an intentional and knowing waiver call an indicted defendant before a grand jury and there interrogate him concerning the subject matter of a crime for which he stands already indicted.' " *United States v. Doss* (C.A.6, 1977), 563 F.2d 265, 277 (quoting *United States v. Mandujano* [1976], 425 U.S. 564, 594, 96 S.Ct. 1768, 1785, 48 L.Ed.2d 212, 233 [Brennan, J., concurring] ). Consequently, because they have already been indicted for crimes involving Akron Square's operation of bingo games, the state cannot compel the Aronsons to produce evidence on that operation unless the Aronsons can be designated as custodians of Akron Square's records.

The United States Supreme Court, in *Fisher v. United States* (1976), 425 U.S. 391, 410–412, 96 S.Ct. 1569, 1581–1582, 48 L.Ed.2d 39, 56–57, has recognized two situations where the act of producing documents in response to a subpoena can result in a testimonial communication. First, the act of production might be testimonial if the act operates as a tacit admission that the requested documents exist and that subpoenaed party has possession or control of them. *Id.* Second, the act of production might be testimonial in that by producing the requested documents, the subpoenaed party admits that the documents are those described in the subpoena and thus implicitly authenticates the documents' genuineness. *Id.* The *Fisher* court chose not to formulate any categorical rules to decide whether a particular act of production would be deemed testimonial in either of these instances. Instead, the court determined that resolution of the issue would ultimately turn upon the facts and circumstances presented by each case. *Id.*

Following *Fisher*, the court examined such facts and circumstances in *United States v. Doe* (1984), 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552. In *Doe*, the appellee was the sole proprietor of several businesses being investigated by the grand jury. The grand jury subpoenaed the appellee to produce the records of those businesses. The district court quashed portions of the subpoenas because it found that the act of production would have compelled the appellee to admit that the records existed, were in his possession, and were authentic. *Id.* at 608, 104 S.Ct. at 1240, 79 L.Ed.2d at 557. The court of appeals affirmed, stating that:

" 'In the matter *sub judice,* however, we find nothing in the record that would indicate that the United States knows, as a certainty, that each of the myriad documents demanded by the five subpoenas in fact is in the appellee's possession or subject to his control. The most plausible inference to be drawn from the broad-sweeping subpoenas is that the Government, unable to prove that the subpoenaed documents exist—or that the appellee even is somehow connected to the business entities under investigation—is attempting to compensate for its lack of knowledge by requiring the appellee to become, in effect, the primary informant against himself.' " *Id.* at 613, 104 S.Ct. at 1243, 79 L.Ed.2d at 561, fn. 12 (quoting *In re Grand Jury Empanelled March 19, 1980* [1982], 680 F.2d 327, 335). The Supreme Court specifically affirmed this part of the court of appeals' decision, concluding that considerable deference should be given to the district court's factual determination that the appellee's act of production would constitute testimonial self-incrimination under the circumstances. *Id.,* 465 U.S. at 613–614, 104 S.Ct. at 1242–1243, 79 L.Ed.2d at 560–561.

Based on the holdings in *Fisher* and *Doe,* a conflict emerged in the federal courts of appeals as to whether the compelled production of documents under the collective entity doctrine remained valid. The court in *Braswell v. United States, supra,* resolved this conflict and reaffirmed the validity of the collective entity

doctrine. The court based the *Braswell* holding on the agency rationale that when a custodian produces subpoenaed records, he is not acting in a personal capacity but instead is acting as a representative of the collective entity he serves. 487 U.S. at 109–110, 108 S.Ct. at 2290–2291, 101 L.Ed.2d at 109. The court, however, made it equally clear that if the appellant had not been the custodian of the collective entity's records, "*Doe* would require that he be provided the opportunity to show that his act of production would entail testimonial self-incrimination." *Id.* at 104, 108 S.Ct. at 2288, 101 L.Ed.2d at 106.

The court further explained the scope of *Fisher* and *Doe* in *Doe v. United States* (1988), 487 U.S. 201, 108 S.Ct. 2341, 101 L.Ed.2d 184, released on the same day as *Braswell*. The issue in *Doe v. United States* was whether the government could require the appellant to sign a consent directive that authorized foreign banks to disclose the financial records of any accounts over which the appellant had a right of withdrawal. The consent directive did not identify or acknowledge the existence of any of the appellant's foreign bank accounts. In determining if the act of executing the consent directive was testimonial, the court explained that under *Fisher* the appellant's execution of the directive would have testimonial significance only if the act communicated factual assertions, implicit or explicit, regarding the existence of a foreign bank account or the appellant's control over any such bank account. *Id.* at 214–216, 108 S.Ct. at 2350–2351, 101 L.Ed.2d at 200–201. On the facts, the court concluded that execution of the directive did not communicate any factual assertions because the nonspecific phraseology of the directive "does not point the Government toward hidden accounts or otherwise provide information that will assist the prosecution in uncovering evidence * * * [or] show the existence of, or [the appellant's] control over, foreign bank account records." *Id.*

After reviewing the Supreme Court's holdings in *Fisher* and its progeny, we believe that *Fisher* controls the scope of a subpoenaed party's rights under the Fifth Amendment and that *Braswell* carves out an exception to those rights whenever it can be shown that the subpoenaed party is the custodian of a collective entity. See *Braswell*, 487 U.S. at 104, 108 S.Ct. at 2288, 101 L.Ed.2d at 106. Therefore, we find that the prosecution must make at least a minimal showing that a subpoenaed party is the custodian of a collective entity's records before that party can be compelled to produce those records under the collective entity doctrine in *Braswell*.

If the prosecution did not have to make this showing, it could defeat a subpoenaed party's right to be protected from testimonial acts of production under *Fisher* by simply alleging that the party was a custodian of the collective entity's records. The party then would be compelled, under the threat of criminal contempt, to produce the collective entity's records even though the

prosecution had presented no evidence that the party had possession or control of the records or that the records even exist. In effect, the prosecution would be compensating for its lack of knowledge by requiring the subpoenaed party to become an informant against himself. *United States v. Doe,* 465 U.S. at 613, 104 S.Ct. at 1243, 79 L.Ed.2d at 561, fn. 12. This type of prosecutorial conduct does not comport with the Fifth Amendment which prohibits the government from building its criminal case, in whole or in part, upon the compelled disclosures of the accused without additional evidence from another source. See *Doe v. United States,* 487 U.S. at 212, 108 S.Ct. at 2348, 101 L.Ed.2d at 198.

Accordingly, in order to invoke the collective entity doctrine, the prosecution must present the trial court with some evidence indicating that the requested documents are in the subpoenaed party's possession or subject to his control. In this case, because the record is completely devoid of any evidence that either Barry or Stanley Aronson is the custodian of Akron Square's records, we will not disturb the trial court's factual determination that the prosecution has failed to show the Aronsons are subject to the collective entity doctrine in *Braswell.*

Even though the prosecution on these facts cannot invoke the collective entity doctrine, given the broad investigatory powers of the grand jury we still must determine if the Aronsons personally can resist the grand jury subpoenas on Fifth Amendment grounds. As discussed *supra,* the state has conceded that under *United States v. Doss* a defendant cannot be compelled to present evidence before the grand jury concerning a crime for which he has already been indicted. Having already been indicted by the grand jury on counts involving Akron Square's operation of bingo games, the Aronsons cannot now be compelled to present to the grand jury evidence concerning that very same bingo operation.

Therefore, because the state has not made a sufficient showing to the trial court that the Aronsons are the custodians of Akron Square's records, the Aronsons, as indicted defendants, are protected by the Fifth Amendment privilege against self-incrimination from being compelled by the grand jury to produce those records. Accordingly, the order of the trial court quashing the grand jury subpoenas is affirmed.

*Judgment affirmed.*

Cook, P.J., and Baird, J., concur.