[Cite as *Ohio Bur. of Workers' Comp. v. Salkin*, 2011-Ohio-4260.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96173

## OHIO BUREAU OF WORKERS' COMPENSATION

PLAINTIFF-APPELLEE

vs.

## BRETT SALKIN, ET AL.

DEFENDANTS-APPELLANTS

JUDGMENT:
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-728169

**BEFORE:** E. Gallagher, J., Boyle, P.J., and S. Gallagher, J.

RELEASED AND JOURNALIZED:     August 25, 2011

ATTORNEYS FOR APPELLANTS

Larry W. Zukerman
S. Michael Lear
Brian A. Murray
Zukerman, Daiker & Lear Co., LPA
3912 Prospect Avenue
Cleveland, Ohio    44115

ATTORNEYS FOR APPELLEE

Mike DeWine
Ohio Attorney General

By:   Patsy A. Thomas
Assistant Attorney General
150 E. Gay Street, 22nd Floor
Columbus, Ohio   43215

James A. Barnes
Assistant Attorney General
140 East Town Street
9th Floor
Columbus, Ohio   43215-6001

EILEEN A. GALLAGHER, J.:

{¶ 1} Brett Salkin ("Salkin") appeals the decision of the trial court finding him in contempt of court and ordering him to comply with a November 24, 2008 subpoena issued by the Bureau of Workers' Compensation

("BWC"). Salkin argues the trial court erred in ordering him to comply with the subpoena because it was not validly issued, that the Fifth Amendment's protections against self-incrimination, and the Health Insurance Portability and Accountability Act ("HIPAA") protect him from releasing the requested information, and that the court erred in finding him in contempt. For the following reasons, we affirm in part, and reverse in part.

{¶ 2} Salkin is a certified health partnership provider for the Ohio BWC and provides counseling services to injured workers. The BWC is a state agency responsible for the administration and maintenance of the workers' compensation fund. It is empowered by R.C. 4121.15 and 4123.08 to conduct investigations, and among other powers, to issue subpoenas in conjunction with those investigations. Additionally, R.C. 4121.121and Ohio Adm.Code 4123-6-45 furnish the BWC with the duty of reviewing and auditing a provider's patient and billing records as part of its responsibility for the management of the bureau. Further, all certified health partnership providers sign the BWC's Health Partnership Provider Application and Agreement, which states as follows:

> "PROVIDER agrees to create, maintain, and retain sufficient records, papers, books, and documents in such form to fully substantiate the delivery, value, necessity, and appropriateness of goods and services provided to injured workers under the Health Partnership Plan (HPP) or of significant business transactions, as provided by OAC 4123-6-451. PROVIDER further agrees to make such records available for review by BWC * * * within 30 calendar days or such time agreed to by the

parties, in accordance with OAC 4123-6-45."

{¶ 3} On November 24, 2008, BWC Special Agent Jennifer Murphy served a subpoena on Salkin requesting documentation of services rendered including, but not limited to: treatment notes, sign-in sheets, and patient encounter forms for eleven injured workers serviced between December 1, 2006 thru June 1, 2008. The subpoena ordered Salkin to provide the requested documents by December 8, 2008. At the request of Salkin's counsel, he was afforded several extensions of time; however, he never did provide the documents to the BWC.

{¶ 4} On June 1, 2010, pursuant to the statutory authority outlined in R.C. 4121.15, the BWC filed an application to enforce the subpoena in the Cuyahoga County Court of Common Pleas. The trial court scheduled a hearing for December 8, 2010. On the day of the hearing, Salkin failed to appear. The court conducted the hearing in his absence and at the conclusion, ruled from the bench. The trial court found the BWC's application to enforce the subpoena to be well taken and granted the BWC's motion. The trial court also found Salkin in contempt of court for failing to respond to a properly issued subpoena and fined him $250. The court ordered Salkin to provide the BWC with the requested documents on or before December 15, 2010.

{¶ 5} Salkin appeals, raising the seven assignments of error contained

in the appendix to this opinion.

{¶ 6} Generally, an appellate court applies an abuse of discretion standard when reviewing a trial court's decision to enforce or quash an administrative subpoena. *Petro v. N. Coast Villas Ltd.* (2000), 136 Ohio App.3d 93, 735 N.E.2d 985. Nevertheless, when a trial court's discretionary decision is based on a specific construction of law, that decision should not be afforded the deference that is usually due to the trial court. Id. It is only when a trial court's decision is based on a specific construction of law that an appellate court reviews the decision under a de novo standard. Id.

{¶ 7} It is with this standard in mind that we review Salkin's seven assignments of error.

{¶ 8} In his first assignment of error, Salkin argues the trial court erred in determining that the BWC's November 24, 2008 subpoena was validly issued. We find no merit to this argument.

{¶ 9} The Ohio Supreme Court has held that under Ohio administrative law, a subpoena will be judicially enforced only so long as: (1) the inquiry is permitted by law, (2) the records sought are relevant to the matter in issue, and (3) the records' disclosure will not cause unreasonable costs and difficulty. *State ex rel. Civ. Rights Comm. v. Gunn* (1976), 45 Ohio St.2d 262, 344 N.E.2d 327; *Petro.*

{¶ 10} As outlined above, the BWC is a state agency responsible for the

administration and maintenance of the workers' compensation fund. It is empowered by R.C. 4121.15 and 4123.08 to conduct investigations, and among other powers, to issue subpoenas in conjunction with those investigations. Additionally, R.C. 4121.121 and Ohio Admin.Code 4123-6-45 furnish the BWC with the responsibility for reviewing and auditing a provider's patient and billing records as part of its responsibility for the management of the bureau. Accordingly, Ohio law permits the BWC to subpoena its patient providers.

{¶ 11} We next determine whether the documents sought under the BWC's November 24, 2008 subpoena are relevant to the matter in issue, and would not cause Salkin unreasonable costs and difficulty. While Salkin argues the BWC's failure to establish a causal link between Murphy's investigation and the records requested, it is not the BWC's burden to prove the relevancy and reasonableness of subpoenas it issues; the burden rests with Salkin. It is clear that when the Ohio Civil Rules of Procedure do not apply, the burden of proof rests with the party challenging the subpoena. *Davies v. Columbia Gas & Elec. Co.* (1938), 68 N.E.2d 571, 578; *Petro.* Thus, it is incumbent on this Court to determine whether Salkin met his burden as to irrelevancy and unreasonable costs and difficulty.

{¶ 12} In the instant matter, the BWC seeks Salkin's documentation of services rendered including, but not limited to treatment notes, sign-in

sheets, and patient encounter forms for eleven injured workers serviced between December 1, 2006 thru June 1, 2008. The BWC is seeking these records as part of its investigatory, audit, and review process. Salkin has failed to contest the BWC's subpoena on the grounds of hardship, unreasonable costs, and difficulty. Instead, Salkin claims the Fifth Amendment's protection against self-incrimination, and HIPAA protected him from releasing the requested documents. While we shall address Salkin's arguments relating to the Fifth Amendment and HIPAA separately in this opinion, we cannot ignore the fact that the BWC requested records from Salkin as part of a review process that is required by the Ohio Revised Code. Moreover, by becoming a health partnership provider, Salkin knew and agreed that the BWC could ask for and review his records.

{¶ 13} We find that the documents sought are relevant, and that their disclosure would not cause unreasonable costs or difficulty to Salkin.

{¶ 14} Salkin's first assignment of error is overruled.

{¶ 15} In his second and third assignments of error, Salkin alleges that the Fifth Amendment privilege against self-incrimination protects him from releasing his patient files and records, and that the required records exception to the Fifth Amendment does not apply. We find no merit to these arguments.

{¶ 16} Salkin's claim that his Fifth Amendment right against

self-incrimination protects him from having to disclose the subpoenaed records is based on the theory that disclosing the records is testimonial in nature. However, we agree with the trial court's conclusion that Salkin's production of patient and billing records is not testimonial because the act of producing the documents is one of surrender, not testimony.

{¶ 17} The Fifth Amendment applies only to the compelled production of documents when the party is required to make incriminating testimonial communication. *Fisher v. United States* (1976), 425 U.S. 391, 408, 96 S.Ct. 1569, 48 L.Ed. 39. According to the United States Supreme Court, there are two situations where the act of producing documents in response to a subpoena can result in testimonial communication:

> "First, the act of production might be testimonial if the act operates as a tacit admission that the requested documents exist and that subpoenaed party has possession or control of them. Id. Second, the act of production might be testimonial in that by producing the requested documents, the subpoenaed party admits that the documents are those described in the subpoena and thus implicitly authenticates the documents' genuineness. Id."

*Fisher*.

{¶ 18} The *Fisher* court chose not to formulate any categorical rules to decide whether a particular act of production would be deemed testimonial in either of these instances. Instead, the court determined that resolution of the issue would ultimately turn upon the facts and circumstances presented by each case. Id. *State v. Aronson* (1993), 91 Ohio App.3d 714, 718, 633

N.E.2d 599, citing *Fisher*.

{¶ 19} In finding the subpoenaed party's production of the documents was not testimony protected by the Fifth Amendment, the court in *Fisher*, held: [t]he existence and location of the papers are a foregone conclusion, and the taxpayer adds little or nothing to the sum total of the government's information by conceding that he in fact has the papers. "Under these circumstances by enforcement of the summons 'no constitutional rights are touched. The question is not of testimony but of surrender.'" Id. at 411, citing *In re Harris* (1911), 221 U.S. 274, 279, 31 S.Ct. 557, 55 L.Ed. 732.

{¶ 20} Similar to the facts in *Fisher*, the BWC knows Salkin possesses the records, as they have been billed by Salkin for services rendered to the patients identified in the subpoena. Thus, Salkin's production of the requested documents does not constitute a tacit admission that the documents exist and that they are in his possession. The act of complying with the subpoena is not one of testimony, but is one of surrender. Accordingly, we find that the subpoenaed records are not testimonial.

{¶ 21} Next, Salkin argues that the required records exception to the Fifth Amendment privileges does not apply in the present case. The United States Supreme Court adopted the required records exception in *Shapiro v. United States* (1948), 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, holding an entity subject to regulation by an administrative agency cannot claim a Fifth

Amendment privilege in records the law requires it to keep. Before documents will be considered "required records" pursuant to *Shapiro*, the state must establish the following: (1) the requirement that the records be kept must be essentially regulatory; (2) the records must be of a kind that the regulated party has customarily kept; and (3) the records themselves must have assumed "public aspects" that render them at least analogous to public documents. *Grosso v. United States* (1968), 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed. 906.

{¶ 22} In this portion of his appeal, Salkin finds error only with the third prong of the required records exception test. Salkin suggests that the BWC failed to provide the court with evidence that the documents were analogous to public documents. Salkin's argument is misplaced. Ohio law makes clear that records that providers are required to keep under administrative laws have assumed public aspects. See *In re Grand Jury Subpoena (Underhill) v. United States* (C.A.6, 1986), 781 F.2d 64, 68-69; *In re Special Grand Jury Investigation of Workers' Comp. Fraud* (Sept. 30, 1999), Franklin App. No. 98AP-1362.

{¶ 23} By virtue of the Health Partnership Provider Application and Agreement with the BWC quoted above, Salkin specifically consented to produce such records that he kept regarding these workers' compensation claimants. Further, R.C. 4121.15, 4123.08, and 4121.121 and O.A.C.

4123-6-45, as outlined above, make it clear that participation in the government-sponsored workers' compensation program subjects the records in question regarding the workers' compensation claimants to review by the BWC. Because the partnership provider is required to furnish the records for review by various state officials upon request, these provisions render these records at least analogous to public documents. See *In re Special Grand Jury Investigation*. As the Sixth Circuit found in *Underhill*:

> "[I]f an individual chooses to begin or continue to do business in an area in which the government requires record keeping, he may be deemed to have waived any Fifth Amendment protection which would otherwise be present in the absence of the record keeping regulation. * * *"

Id. at 70.

{¶ 24} Thus, we find that under these circumstances the documents in question have assumed some "public aspects" that render them at least analogous to

{¶ 25} public documents, and the third prong of the required records exception test has been met.

{¶ 26} Salkin's second and third assignments of error are overruled.

{¶ 27} In his fifth and seventh assignments of error, Salkin argues that exceptions to HIPAA should not apply in the present case. More particularly, in his fifth assignment of error, Salkin argues that the law enforcement exception to HIPAA should not apply because the BWC did not

prove that Special Agent Murphy was a law enforcement official at the time she issued the administrative subpoena.

{¶ 28} However, in putting forth his fifth assignment of error, Salkin fails to cite to any legal authority for his claim that by not establishing Murphy's status as a law enforcement officer, the BWC's subpoena becomes invalid. An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite to any legal authority in support of an argument as required by App.R. 16(A)(7). *State v. Martin* (July 12, 1999), Warren App. No. CA99-01-003, citing *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 658 N.E.2d 1109; *Siemientkowski v. State Farm Ins.,* Cuyahoga App. No. 85323, 2005-Ohio-4295. "If an argument exists that can support this assigned error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), Summit App. Nos. 18349 and 18673. We therefore disregard and overrule Salkin's fifth assignment of error.

{¶ 29} Similar to other arguments made by Salkin throughout his appeal, in his seventh assignment of error, Salkin mistakenly places the burden of proving the legality of the subpoena with the BWC. Specifically, the entirety of Salkin's seventh assignment of error is based on the alleged failure of the BWC to prove that its subpoena fell within an exception to HIPAA. However, as stated above, the burden of proof rests with the party challenging the subpoena. *Davies*; *Petro.*

{¶ 30} Accordingly, we must determine whether Salkin proved that the BWC's subpoena failed to fit an exception within HIPAA. Salkin's brief fails entirely in this matter. Nonetheless, we agree with the trial court's conclusion that the BWC's subpoena falls within the law enforcement exception and the workers' compensation exception to HIPAA.

{¶ 31} The law enforcement exception to HIPAA provides:

"A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if * * * [i]n compliance with and as limited by the relevant requirements of * * * an administrative subpoena * * * provided that: (1) The information sought is relevant and material to a legitimate law enforcement inquiry; (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and (3) De-identified information could not reasonably be used."

45 C.R.F. 164.512(f)(1)(ii)(C)(1)-(3).

{¶ 32} The workers' compensation exception to HIPAA provides:

"A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault."

{¶ 33} The BWC's legitimate law enforcement inquiry is statutorily created by workers' compensation laws that: (1) permit the BWC to issue subpoenas to investigate and audit fee bill payments; and (2) require BWC medical providers to furnish their patient and billing records to the BWC. See R.C. 4121.15, 4121.121, 4123.08, and O.A.C. 4123-6-45. The records

sought by the BWC are within this authority and it is imprudent for Salkin to believe that he can provide unsubstantiated services on behalf of the BWC. Moreover, it is improbable for Salkin, who signed the BWC Health Partnership Provider Application and Agreement, to think that he can receive the benefit, or payment from the BWC for services rendered and not comply with the burden, supplying the BWC with records when requested.

{¶ 34} The workers' compensation exception to HIPAA applies equally to the facts of this case. Salkin's disclosure of records to comply with the BWC's subpoena would be to the extent necessary to comply with laws relating to workers' compensation. Thus, the exception applies.

{¶ 35} We find that the law enforcement and workers' compensation exceptions to HIPAA apply to the instant case. Salkin's seventh assignment of error is overruled.

{¶ 36} In his fourth and sixth assignments of error, Salkin claims the trial court erred in finding him in indirect civil contempt. More specifically, in his fourth assignment of error, Salkin argues that the court erred in finding him in contempt because he did not intend to obstruct the administration of justice. In his sixth assignment of error, Salkin claims the court erred when it imposed a $250 fine without first providing him with an opportunity to purge the contempt. We find merit to Salkin's sixth assignment of error.

{¶ 37} Contempt has been defined as the disregard for judicial authority. *State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. When reviewing a finding of contempt, an appellate court applies an abuse of discretion standard. See *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249.

{¶ 38} Contempt may be either direct or indirect. *In re Purola* (1991), 73 Ohio App.3d 306, 310, 596 N.E.2d 1140. In addition, "[c]ontempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." *Purola* at 311. "Civil contempt is designed to benefit the complainant and is remedial in nature. * * *  Thus, an individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order." *State v. Miller*, Holmes App. No. 02 CA 16, 2003-Ohio-948, ¶28, citing *Purola*, supra.

{¶ 39} Although Salkin challenges the contempt finding on several bases, we find dispositive his argument that the trial court abused its discretion by providing no "purge opportunity" upon the finding of indirect civil contempt. "A sanction for civil contempt must allow the contemnor the

opportunity to purge him or herself of contempt." *O'Brien v. O'Brien*, Delaware App. No. 2003-CA-F12069, 2004-Ohio-5881, ¶68, citing *Burchett v. Miller* (1997), 123 Ohio App.3d 550, 552, 704 N.E.2d 636 (additional citations omitted).

{¶ 40} In this case, although a contempt hearing was duly conducted, the sanction provided no purge provision as required. The trial court stated as follows:

> "So, again, the defendant is found to be in contempt; is ordered to comply with the subpoena on or before December 15, 2010; and, again, the Courts found him to be in contempt and is fining him $250 plus court costs. And also if the defendant fails to comply with the order at this point to provide documents by December 15th, then the Court may also and will impose a term of local incarceration of up to 30 days, and that is until the requested documents have been provided.
>
> So that is the Court's decision, and if, again, the defendant provides the documents, then the Court will be so notified, or the parties are required to notify the Court, and then the action will be concluded at that point."

{¶ 41} While the BWC argues that the court's language in the second paragraph provides Salkin with a purge opportunity, that is not this Court's interpretation. We conclude that the court fined Salkin $250 without directly providing him with an opportunity to purge the contempt. The trial court's language could be interpreted to mean that upon providing the subpoenaed documents, the trial court would conclude the matter and not subject Salkin to the 30 days incarceration, not that the $250 fine would go away as interpreted by the BWC. In either case, the absence of a clear

opportunity to purge the contempt constitutes an abuse of the trial court's discretion. The court's finding of contempt is reversed.

**{¶ 42}** Salkin's sixth assignment of error is sustained.

**{¶ 43}** Our analysis of Salkin's sixth assignment of error renders his fourth assignment of error moot.

**{¶ 44}** The judgment of the trial court is affirmed in part and reversed in part and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR

## Appendix

**Assignments of Error:**

**"I.   The trial court erred in finding that the Bureau of Workers' Compensation subpoena issued to Appellant Salkin was a valid**

and properly issued subpoena."

"II.   The trial court erred in finding that Appellant Salkin's Fifth Amendment right to be free from self-incrimination did not extend to Appellant Salkin's subpoenaed patient files and records."

"III.   The trial court erred in finding that the Bureau of Workers' Compensation established the necessary factors for the required-records exception to apply to Appellant Salkin's Fifth Amendment rights."

"IV.   The trial court erred in holding Appellant Salkin in indirect civil contempt for failing to comply with a Bureau of Workers' Compensation subpoena."

"V.   The trial court erred in finding that Special Agent Jennifer Murphy was employed as a valid law enforcement official at the time she issued a Bureau of Workers' Compensation subpoena to Appellant Salkin."

"VI.   The trial court erred in imposing a fine and court costs on Appellant Salkin as part of the sanction for holding him in indirect civil contempt without giving him an opportunity to purge the contempt."

"VII.   The trial court erred in finding that exceptions to the Health Insurance Portability and Accountability Act apply and permit production and disclosure of all records contained in a patient's medical file by a medical professional when said records are subpoenaed by the Bureau of Workers' Compensation."