J-S30043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARRY EMERSON MILLER | : | |
| | : | |
| Appellant | : | No. 1815 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 2, 2017
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001155-2016

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED JULY 21, 2020**

Appellant, Harry Emerson Miller, appeals *nunc pro tunc* from the judgment of sentence entered on November 2, 2017, in the Court of Common Pleas of Blair County following his conviction by a jury on four counts of possession of firearms prohibited, 18 Pa.C.S.A. § 6105(a)(1).[1] After a careful review, we affirm.

The relevant facts and procedural history are as follows:  Appellant was arrested, and, represented by counsel, he proceeded to a jury trial on August 7, 2017.  The trial court has aptly summarized the evidence offered at the jury trial as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] As discussed *infra*, Appellant's appeal rights were reinstated via the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

The jury first heard from the Blair County Prothonotary and clerk of courts, Carol Newman. She testified and provided certified copies of records from her office which reflected that [Appellant] pled guilty at [lower court docket] number 756 of 2004, Count One, Possession with Intent to Deliver, an ungraded Felony. She established the identity of Appellant using his birth date, address, and social security number. In this manner, it was established that Appellant had a felony record for delivery of narcotics.

The Commonwealth's next witness was Kerry Hoover, chief of the Martinsburg Police Department, who was qualified as an expert witness in the field of firearms. He testified that if you have a felony conviction you are not permitted to possess even a portion of certain firearms, in particular, an AR-15. The law prohibits possession of even the portion of the AR-15 that contains the serial number, called the "lower". Chief Hoover identified Appellant in the courtroom and noted that his residence is right across a narrow alley from the police station. Chief Hoover testified that Appellant frequently would come over to converse with police. Appellant presented himself as being very interested in firearms. He talked a lot about target shooting and ammunition.

From the police station, if Appellant's garage door was up, officers could see him sitting at his workbench, which had a reloading press attached to it with other reloading supplies, and he would sit there reloading ammunition. Appellant had discussed shooting weapons at the target range with Chief Hoover, and he had discussed building different weapons for different people. He told the Chief that he had sold a weapon to someone else, specifically, Chris Patrick, who was retiring from the Pennsylvania State [P]olice and was buying himself an AR-15 as a retirement gift. On October 22, 2015, Appellant showed Chief Hoover a lever action rifle, a Henry style. On March 7, 2016, the Chief had to go over to Appellant's house and ask him to turn down his music because there was a meeting at the police department. Appellant was sitting reloading ammunition and listening to music.

On or about March 18 or 19[,] 2016, Appellant evicted a person named Martin Fisher from his residence, and [he] was concerned about giving weapons back to Mr. Fisher or his family, so he wanted to turn them over to the Martinsburg Police Department. Appellant told the police that Mr. Fisher had a felony record and was not entitled to possess firearms. Appellant showed police a large bolt action rifle in the house that day that was not

Mr. Fisher's. At this point, Chief Hoover took it upon himself to investigate Appellant's criminal record. He discovered that Appellant had pled guilty to a felony possession with intent to deliver charge. The police decided to apply for a search warrant for Appellant's house. The warrant was obtained [on] March 30, 2016[,] and executed the next day. When they executed the warrant the police found four guns. There were two handguns and two rifles; one rifle was an AR-15[,] which was pink and black in color. The other rifle was a Remington .308 bolt action rifle with a very large scope. These weapons were produced as exhibits at trial and identified by Chief Hoover. Appellant told the police that all guns belonged to his wife.

The next witness was Adam Ingram of the Roaring Spring Police Department who responded to Appellant's house [on March 19, 2016,] and [he] saw Appellant take three rifles out of his closet near the kitchen area. Appellant represented that these were Martin Fisher's firearms. Appellant showed the officer a military style rifle that was inside [of] a hard green case in his living room that was separate from the closet area. The witness identified Commonwealth's Exhibit 8 A as being a photograph of the same rifle that Appellant displayed to him that night. He noted that Appellant's wife was not present when this happened. Appellant told the police that the rifle had a $4000[.00] scope on it and could hit a target from an extended range.

Lance Morris was called to testify and said he was a patrolman for multiple police departments, and on March 19, 2016[,] [he] responded to Appellant's home. He saw Appellant show Officer Ingram the Remington .308 bolt action rifle. He also saw the two AR-15 style rifles.

Justin Davis was also called to testify and described that he was a police offer and also responded to Appellant's house on [March 19, 2016]. He testified he saw a rifle leaning against the wall[,] he inspected it[,] and [he] found that it was loaded. He [testified] that two rifles and two handguns were found in the residence.

Richard Schuh was called to testify[,] and [he] said that he was self-employed putting graphics onto firearms and selling firearms. He maintains a federal license and is licensed within the Blair County Sheriff's Department to sell firearms. He testified he knew Appellant and his wife through his gun shop. He testified that he has known Appellant for about 15 years. He recalled

selling firearms to Appellant's wife. He described firearms transfers he had made with Appellant's wife.

John Frederick Simpson was called to testify. He said he was a licensed gun dealer. He showed an AR-15 rifle and explained the parts of it. He testified that he knew Appellant. He testified that Appellant contacted him via social media on a Facebook messenger app. He said that Appellant had come to his shop in Alexandria twice. Appellant and a man he was with wanted to barter ammunition for AR-15 parts, specifically lower parts kits. The witness testified that he bartered with Appellant for lower parts kits for the AR-15 rifle and supplied Appellant with three. An exchange on social media was read into the record, representing that Appellant was looking for parts for AR-15 rifles. The social media also depicted AR-15 rifles. The photographs were purportedly sent by Appellant. The witness's testimony also described characteristics of weapons in this case, including their weight and difficulty in shooting them, introduced by the Commonwealth to cast doubt on the theory that the weapons were owned by Appellant's wife.

The next witness was Martin Fisher, who testified that he previously was friends with Appellant and briefly lived with him in March 2016. He testified that in addition to the weapons that he brought to Appellant's residence, while he lived there, there were anywhere between a dozen and a half to two dozen firearms that went through the house. He testified that Appellant would handle them and trade them, keep some a while, and then trade them for other firearms. He testified that he saw Appellant shoot firearms and build them. The witness testified that Appellant built semi-automatic rifles like [an] AR-15[.] He testified that he saw Appellant build around 8 to 10 AR-15s. He testified specifically that he saw Appellant shooting a .338 Lapua, a Remington 835, and a Mossberg. He said that after he moved in he saw Appellant fire a pink camo AR-15 and several other AR-15s[,] as well as a .308 sniper rifle and a Sig Sauer handgun.

The Commonwealth brought [up] Martin Fisher's criminal record of theft and receiving stolen property. [Fisher] also testified that he had pending criminal charges that he was fighting. (N.T. Day 2 of 3, p. 132). He stated that he was facing a felony charge of carrying a firearm without a license. He testified that he was receiving no consideration from the Commonwealth in exchange for his testimony. (N.T. Day 2 of 3, p. 133).

Appellant took the stand and testified that he was convicted of Possession with Intent to Deliver marijuana in September [of] 2004. He testified that his wife was intensely interested in firearms and owned many weapons. He testified that the Sig Sauer handgun was hers. He testified that the Lapua rifle was hers. He testified that Martin Fisher had lived with him for a time. He testified that the Henry rifle[, which] he showed [to] Chief Hoover[,] was a replica, like a movie prop. He testified that he had never been at a shooting range with Mr. Fisher. He testified that the guns in his house belonged either to Mr. Fisher or to Appellant's wife.

Trial Court Opinion, filed 6/20/18, at 3-9.[2]

At the conclusion of the trial, the jury convicted Appellant on four counts of possession of firearms prohibited, and on November 2, 2017, the trial court sentenced Appellant to an aggregate of 48 months to 96 months in prison. On Monday, November 13, 2017, Appellant filed a timely, counseled post-sentence motion[3] wherein he sought, *inter alia*, a new trial based on after-discovered evidence. Relevantly, Appellant specifically averred the following (verbatim):

B. Motion for a New Trial based upon After Discovered Evidence Pursuant to Pa.R.Crim.P. # 720(C)

\*\*\*

---

[2] On January 14, 2020, the trial court filed a brief Pa.R.A.P. 1925(a) opinion indicating it was relying on its previous opinion, which was filed on June 20, 2018, for purposes of this appeal.

[3] *See* 1 Pa.C.S.A. § 1908 (when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation).

6. Defense Counsel has learned that a member of the District Attorney's staff met with the Defendant days prior to the beginning of Jury Trial and:

> a. such meeting was held without counsel present despite there being no question that the Defendant was represented by counsel, and

> b. it is [Defense Counsel's] belief that the information gleaned at that meeting resulted in the disclosure of the Defendant's trial strategy potentially prejudicing his ability to have a fair trial[.]

Appellant's Counseled Post-Sentence Motion, filed 11/13/17, at 3.[4]

On January 23, 2018, the trial court held an evidentiary hearing regarding Appellant's post-sentence motion. The trial court has summarized the relevant testimony offered during the post-sentence hearing as follows:

> Appellant testified that he was in attendance at a meeting [on July 28, 2017,] at the Original Italian Pizza restaurant in Hollidaysburg with local TV and radio personality Jim Gregory and another person named Christopher Irvin. The meeting with Jim Gregory ended, and Randy Feathers, who is employed by the Blair County District Attorney's Office as a detective, came into the pizza shop. Appellant testified that [Detective] Feathers asked him a few questions. Appellant testified that [Detective] Feathers asked him about the "302' ing" (involuntary civil mental health commitment) of Martin Fisher, and asked him, "Do you think your lawyer can win this?" He asked Appellant about "jury nullification," and whether he was doing that.

---

[4] Appellant also claimed in his post-sentence motion that he was entitled to a new trial due to the Commonwealth withholding information that a witness had a then pending criminal case. He claimed that he learned of the witness' criminal case after trial, and therefore, he was entitled to a new trial based on after-discovered evidence. The trial court denied Appellant's post-sentence motion as to this claim. Appellant has not developed any argument regarding this claim and has abandoned it on appeal. Therefore, we shall not address this issue further. *See* Pa.R.A.P. 2119 (pertaining to argument in the appellate brief).

Randy Feathers testified that Jim Gregory asked him to come to a meeting with himself and Christopher Irvin and Appellant. The discussion was going to be about a website that Appellant and Mr. Irvin were involved with, and the organization, Operation Our Town. [Detective] Feathers is a board member of Operation Our Town. He testified that he wanted to explain to the gentlemen [the] Operation Our Town process. Appellant and Mr. Irvin had been publishing a webpage alleging that Operation Our Town was committing federal violations, and [Detective] Feathers wanted to explain to them what the organization does.

[Detective] Feathers testified…that his motivation in going to the meeting was to get the gentlemen to put accurate information on their website because he felt that they were putting things on the website that were false. His motivation was to help them with the website, to get them to put, in his words, "…truthful stuff on there". (N.T. 1/23/18 p. 19).

[Detective] Feathers testified that he did not set the meeting up. He was told where it was going to be held. [Detective] Feathers testified…that he said in the beginning of the meeting that he was there to talk about Operation Our Town and not criminal cases. He testified that he told the gentlemen how the organization worked, explained its funding process, and how the organization pays a prosecutor in the District Attorney's Office and police officers.

[Detective] Feathers testified…that he did not ask Appellant questions about his criminal case. He testified that Appellant talked about his case, but that he did not discuss anything about the case with Appellant. (N.T. 1/23/18 p. 22).

[Detective] Feathers testified that he knew he should not be talking to a defendant about their criminal case. He testified that he understood he should not be talking to someone who is represented by counsel.

Trial Court Opinion, filed 6/20/18, at 10-12.

On March 19, 2018, the trial court denied Appellant's post-sentence motion, and Appellant filed a timely, counseled appeal to this Court. However, on September 4, 2018, this Court dismissed Appellant's appeal for failure to file a brief. Appellant did not seek review in our Supreme Court.

Instead, on April 12, 2019, Appellant filed a timely, counseled PCRA petition seeking the reinstatement of his direct appeal rights *nunc pro tunc*. *See* 42 Pa.C.S.A. § 9545(b)(1) (stating petition shall be filed within one year of the date the underlying judgment becomes final); 42 Pa.C.S.A. § 9545(b)(3) (stating judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review").

On November 14, 2019, the lower court granted Appellant's PCRA petition and reinstated Appellant's direct appeal rights. This counseled appeal followed on December 6, 2019, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following sole issue in his "Statement of Questions Involved" (verbatim):

> 1. Did the trial court abuse it's [*sic*] discretion when it denied the Appellant's post-sentence motion for a new trial based on after-discovered evidence of the Commonwealth's failure to disclose that a member of the District Attorney's Office met with the Appellant without his attorney present and discussed aspects of the case[?]

Appellant's Brief at 5 (suggested answer omitted).

Appellant's sole appellate issue is whether the trial court erred in denying his post-sentence motion for a new trial based on after-discovered evidence. Specifically, Appellant contends the Commonwealth violated his constitutional rights when Appellant met with a detective from the District

- 8 -

Attorney's Office, Randy Feathers, on July 28, 2017, without Appellant's counsel being present. Appellant claims that during the meeting the detective questioned Appellant about his trial strategy, and in response, Appellant revealed his planned strategy of jury nullification based on the guns being owned by Appellant's wife, as opposed to being owned by Appellant. Appellant contends his counsel did not learn of the meeting until after trial, and at this point, counsel revealed to Appellant the "significance" of the meeting, including the fact that Detective Feathers violated Appellant's *Miranda*[5] rights, his Fifth Amendment right against self-incrimination,[6] and his Sixth Amendment right to counsel.[7]

Initially, we note that "[a] post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). Further, a trial court's refusal to grant a new trial on the basis of after-discovered evidence will not be disturbed on appeal absent a clear abuse of discretion. *Commonwealth v. Weis*, 611 A.2d 1218, 1228 (Pa.Super. 1992).

---

[5] *Miranda v. Arizona*, 384 U.S. 36, 86 S.Ct. 1602 (1966).

[6] The Fifth Amendment protects a witness from compelled self-incrimination and renders that testimony unavailable. *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237 (1984).

[7] The Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings. U.S.C.A. Const. Amend. 6.

In order to be granted a new trial based on after-discovered evidence, the [defendant] must satisfy a four-part test requiring

the [defendant] to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Commonwealth v. Small**, 647 Pa. 423, 189 A.3d 961, 972 (2018) (quotation omitted). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa.Super. 2010). In addition, the after-discovered evidence must be producible and admissible. **Small**, **supra**, 189 A.3d at 972.

Moreover, credibility determinations are an integral part of determining whether a defendant has presented after-discovered evidence that would entitle him to a new trial. **See id.** We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." **Padillas**, 997 A.2d at 365. "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Id.**

In the case *sub judice*, as to the fact Detective Feathers and Appellant were at the same meeting on July 28, 2017, the trial court reasoned:

> [T]he allegation pertaining to District Attorney's Office [D]etective Randy Feather[s]' contact with [Appellant] outside the presence of his counsel fails the first prong of the [after-discovered evidence test]. This information was available to [Appellant] prior to the conclusion of trial, and indeed prior to the beginning of trial. In other words, Appellant knew that he met with Randy Feathers, knew what they talked about, and could have reported that to his counsel before trial.

Trial Court Opinion, filed 6/20/18, at 14.

We agree with the trial court's sound reasoning. Simply put, the fact Appellant attended a meeting with Detective Feathers prior to Appellant's jury trial is not "after-discovered evidence" since such information was in Appellant's own possession. Further, any alleged "constitutional legal significance" of the meeting could have been learned by Appellant with the exercise of reasonable diligence (*i.e.*, he simply had to ask his counsel). **See Small**, **supra** (holding the defendant must demonstrate the evidence could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence).

Moreover, we note Appellant has failed to demonstrate that his alleged after-discovered evidence would likely result in a different verdict if a new trial were granted. **See id.** Appellant alleges that, upon questioning by Detective Feathers, Appellant revealed his trial strategy, and Detective Feathers reported this strategy to the District Attorney's Office.

- 11 -

However, at the post-sentence hearing, Detective Feathers testified to a contrary version of events. Specifically, while he admitted that he met with Appellant and others to discuss the Operation Our Town organization, he specifically denied questioning Appellant about his pending criminal matter. N.T., 1/23/18, at 20. In fact, Detective Feathers testified he told Appellant he did not want to hear about his criminal case, but Appellant "ranted" about his innocence. *Id.* at 20-21. In any event, Detective Feathers testified he did not report the statements Appellant made to anyone, including any member of the District Attorney's Office. *Id.* at 21-22.

The trial court found Detective Feathers' testimony to be credible. Trial Court Opinion, filed 6/20/18. This fact, in combination with the trial court's consideration of Appellant's motive for offering the evidence, and the overwhelming evidence of Appellant's guilt, supports the conclusion that Appellant failed to meet the final prong of the after-discovered evidence test (that the after-discovered evidence would likely result in a different verdict if a new trial were granted). *Small*, *supra*.

Based on the aforementioned, we conclude the trial court did not abuse its discretion in finding no merit to Appellant's post-sentence after-discovered evidence claim. Therefore, we affirm Appellant's judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2020